# EXHIBIT C

Docket No.: 031073.00001-US04
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Hungerpiller et al.

**Reexamination Proceeding:**

Control No. 90/008,470

Filed: January 31, 2007

*Corresponding to* U.S. Patent No. 6,826,548

**Group Art Unit:** 3628

**Examiner:** I. N. Borissov

**Office Action dated:** February 17, 2010
**USPTO Correspondence dated:** April 8, 2010

**For:** SYSTEM AND METHOD FOR
PROCESSING RETURNED MAIL

### RESPONSE BY PATENT OWNER TO OFFICE ACTION
### IN EX PARTE REEXAMINATION

Mail Stop *Ex Parte* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

      This Response is filed in response to the Office Action dated February 17, 2010 and U.S. Patent and Trademark Office Correspondence dated April 8, 2010, captioned *Letter Regarding Restart of Period for Reply*. Claims 1-38 issued in U.S. Patent No. 6,826,548. After entry of the Response, claims 1, 2, 4-39, 42-62 and 64-136 are pending. Claims 1, 2, 4-39, 42-62 and 64-114 presently stand rejected, and claims 115-136 are newly added. In accordance with the requirements of 37 C.F.R § 1.530(j), this Response, including the new claims presented, does not enlarge the scope of the claims, and does not introduce any new matter.

      A personal interview for this reexamination was conducted on April 28, 2010, at 12:30 PM with Examiner Borissov. The Patent Owner was represented by the undersigned. Co-inventor Ralph M. Hungerpillar was also present. The Patent Owner and his representative appreciate the

PAGE 64

Application No.: 90/008,470
Filing Date: January 31, 2007
Title: *Ex Parte* Reexamination of Patent No. 6,826,548

Docket No.: 031073.00001-US04

that perform those functionalities. When properly viewed against the applicable standard and as shown in detail below, none of the asserted references, when considered either individually or collectively, teach or suggest the claimed combinations of functionalities and system components. The claimed subject matter of the presently pending claims would have been unobvious to a person of ordinary skill at the time of the effective filing date of the '548 patent.

### B. The *Prima Facie* Case of Obviousness Has Not Been Met

The burden of establishing a *prima facie* case of obviousness based on the above references has not been met. Accordingly, the § 103(a) rejections are respectfully requested to be withdrawn.

Assuming, *arguendo*, that the concept of returned mail is present in the cited references, the arguments set forth below demonstrate that PARS, Second-Generation, Petkovsek, Pierce and/or Publication 28, alone or in combination, do not disclose all of the elements of the claims. For example, because none of the references disclose "receiving from a sender a plurality of mail items, each including an addressee and incorporating encoded data indicating whether the sender wants a corrected address to be provided for the addressee," as recited in claim 39 (and similarly recited, for example, in original independent claims 1, 14, 25 and 32), any combination of the references cannot disclose the receipt of "encoded data indicating whether the sender wants a corrected address to be provided for the addressee," as claimed. The Office Action's rejections under § 103(a) appear to be based largely on the Examiner's assertion of Second-Generation's alleged disclosure of the concept of processing returned mail. However, as will be demonstrated below, whether or not Second-Generation discloses the concept of returned mail is irrelevant. As such, no *prima facie* case of obviousness based on the other elements has been set forth.

Application No.: 90/008,470  
Filing Date: January 31, 2007  
Title: *Ex Parte* Reexamination of Patent No. 6,826,548

PAGE 65  
Docket No.: 031073.00001-US04

### C. No Rationale Supports a Finding of Obviousness Based on the References

Furthermore, no rationale exists that supports a *prima facie* case of obviousness based on PARS, Second-Generation, Petkovsek, Pierce and/or Publication 28, singly or in combination. The claims are not merely variations or combinations of the elements found in these references, but represent a paradigm shift in the technology for processing returned mail for customers (mailers). PARS, for example, describes a U.S. Postal Service system and method that attempts to obtain a correct address for a mail item prior to attempted delivery to an intended recipient. PARS is a system that does not consider or contemplate the processing of mail items that are incorrectly addressed and that are returned after an attempted delivery to an intended recipient, to then obtain a correct address of an intended recipient. In fact, as will be described in further detail herein, PARS was developed with the specific intent and purpose of providing a solution to systems, such as Second-Generation, that utilized a post-mailing address correction paradigm that obtained correct addresses after attempted delivery to an intended recipient.

The instant specification discloses, and the present claims exist in, a vastly different mailing and address correction paradigm than that of PARS -- one that employs methods and systems that start with an incorrectly addressed mail item that is first mailed, then returned for address correction, and subsequently re-mailed to the intended recipient for delivery. In contrast, PARS, the primary reference cited in the Office Action and relied upon by the Examiner, discloses a system, technique and elements that are dysfunctional in this post-mailing return for address correction paradigm, as recited in the presently pending claims. Moreover, the teaching away in PARS from the return of undeliverable mail items address correction paradigm that is disclosed in the Second-Generation reference would cause one of ordinary skill to look away from these references, rather than to combine them.

### Rejection of claims 1-38 under 35 U.S.C. § 103(a)

With regard to the rejection of claims 1-38 under 35 U.S.C. §103(a), independent claims 1 and 14 have been amended to recite that intended recipient identification information "includes the name and address of an addressee." As noted above, support for the amendment to claims 1-38

Application No.: 90/008,470
Filing Date: January 31, 2007
Title: *Ex Parte* Reexamination of Patent No. 6,826,548

PAGE 66
Docket No.: 031073.00001-US04

is found, for example, at least at: i) column 2, line 66 - column 3, line 10; ii) column 3, lines 32-51, and Figure 1; and iii) column 4, line 34 - column 5, line 13, and Figures 2 and 3 of the '548 patent. In particular, support for the "includes the name and address of an addressee" limitation added in the present Response is found at least at column 2, line 66 - column 3, line 10.

With regard to independent claim 1 and dependent claims 2-13, on page 3 of the Office Action, the Examiner cites page 2, paragraph 1, of PARS as allegedly disclosing "encoding data including intended recipient identification information on each of a plurality of mail items from a sender prior to mailing." Page 2, paragraph 1 of PARS is provided below:

> Introduction
>
> Point of entry redirection is the goal of the U.S. Postal Service design strategy during development of the PARS. Of the more than 100 billion first class mailpieces processed by the USPS in 1998, over 3% required redirection. This provides an opportunity for significant cost savings as the redirection processes are automated and streamlined. In the past ten years, Optical Character Recognition (OCR) technology and the Remote Barcoding System (RBCS) for OCR read rejects have been fully deployed in our letter mail environment. Our automation program now gives us the capability to barcode and sort nearly all letter mail to the carrier route walk sequence, utilizing an 11 digit delivery point code. Processing technology now can be developed for potential redirection identification during initial processing, staging the physical mail, using our RBCS strategies to direct images for further computer or manual recognition, and print, label and sort redirection mail at high speeds.
>
> With over 300 automation capable processing facilities in the United States, any changes made to our infrastructure are serious endeavors. The strategy of the USPS is to inject our redirection process with a new state of the art strategy and technology.

The Patent Owner respectfully submits that this passage of PARS does not disclose "encoding data including intended recipient identification information." Instead, the 11 digit delivery point code disclosed in PARS, and referred to by the Examiner on page 3 of the Office Action, is merely a delivery point code -- i.e., only a place -- that is not and does not contain information pertaining to an "intended recipient" -- i.e. a person or entity -- as recited in claim 1. An "11 digit delivery point" as disclosed in PARS is not i) encoded and ii) does not provided "intended recipient identification information" such as a "name and address," as recited in claim 1. More particularly, PARS discloses:

In the United States, an 11-digit numeric code uniquely identifies

Application No.: 90/008,470
Filing Date: January 31, 2007
Title: *Ex Parte* Reexamination of Patent No. 6,826,548

PAGE 67
Docket No.: 031073.00001-US04

> each delivery point in the country. For redirection confirmation, the <u>delivery point barcode and the **name of the customer as addressed** **must be positively confirmed with an entry in the national "Change Of Address" (COA) database**</u>.

PARS, p. 3.

Accordingly, PARS discloses that the 11-digit numeric code is different from a name and address of an addressee.

With regard to "receiving those items of the plurality of mail items that are **returned as being undeliverable**," as recited in claim 1, PARS discloses a technique that relies on the 11 digit delivery point code to provide a fundamentally different approach than that of the claimed invention. More particularly, PARS does not teach or suggest that mail is "**returned** as being undeliverable," as acknowledged by the Examiner on pages 4-5 of the Office Action. Instead, PARS discloses a "**point of entry solution**" for "**redirection identification during initial processing**." (PARS, pp. 3, 2, respectively (emphasis added)). That is, PARS makes abundantly clear that the "initial processing" as disclosed in PARS is not the same as a mail item that is "returned," as recited in the claimed invention.

PARS also discloses that

> [w]ithout this **crucial step** [of confirming that the mail should be redirected at the point of entry], the mailpiece must be processed to the customer addressed destination, manually identified and handled by the carrier, then rehandled and sent to the redirection process in the local plant. Point of entry redirection avoids the intermediate, inefficient, time and labor consuming step in the delivery.

PARS, pg. 3, emphasis added.

Accordingly, PARS does not receive "mail items that are returned as being undeliverable," and instead teaches away from this aspect of the claimed invention. In particular, PARS discloses that address correction occurs <u>before</u> attempted delivery, and before mail items are

PAGE 68
Application No.: 90/008,470
Docket No.: 031073.00001-US04
Filing Date: January 31, 2007
Title: *Ex Parte* Reexamination of Patent No. 6,826,548

returned. Accordingly, there is no mail that is "returned as being undeliverable" as recited in the present invention.

In view of the foregoing, the Patent Owner submits that PARS does not disclose or suggest at least the *"returned as being undeliverable"* limitation, and in fact teaches away from this limitation, as recited in claim 1 of the present invention.

Because PARS does not disclose "receiving those items of the plurality of mail items that are **returned as being undeliverable**," the Patent Owner further submit that PARS does not disclose or suggest at least the following, as now recited in claim 1:

> scanning and decoding the encoded data, subsequent to receiving the
>  returned undeliverable mail items, on the items of undeliverable mail
>  to identify intended recipients having incorrect addresses;
> determining, subsequent to decoding, if the sender wants a corrected
>  address provided; and
> if the sender wants a corrected address provided, electronically
>  transferring to the sender information for the identified intended
>  recipients for the sender to update the sender's mailing address files.

The Patent Owner finds no teaching or suggestion in PARS regarding at least these underlined features recited in claim 1, added by amendment.

To compensate for the deficiencies of PARS, the Examiner relies on the Second-Generation reference.

On page 5 of the Office Action, the Examiner states:

> It would have been prima facie obvious to one having ordinary skill in
> the art at the time the invention was made to modify USPS Solution to
> include receiving those items of the plurality of mail items that are
> returned as being undeliverable, as disclosed in Second Generation,
> because it would advantageously allow to be in compliance with the
> requirements and procedures of the Second Generation Address Change
> Service.

Application No.: 90/008,470  
Filing Date: January 31, 2007  
Title: *Ex Parte* Reexamination of Patent No. 6,826,548

PAGE 69  
Docket No.: 031073.00001-US04

Office Action, p. 5.

The Patent Owner disagrees with the Office Action's contention. Moreover, the use of Second-Generation as proposed by the Examiner in the Office Action adds nothing of value to PARS. That is, PARS discloses a system for updating addresses for undeliverable mail items that makes it unnecessary to combine it with Second-Generation. This is perfectly consistent with the fact that PARS teaches away from the approach of processing undeliverable mail items as disclosed in Second-Generation (and vice-versa), and the chronological and historical development of the Second-Generation and PARS systems.

Even aside from the differences between PARS and the claimed invention, the combination proposed in the Office Action would significantly change the principle of operation of PARS. That is, and as noted above, PARS describes a U.S. Postal Service system and method that attempts to obtain a correct address for a mail item prior to attempted delivery to an intended recipient. PARS is a system that does not consider or contemplate the processing of mail items that are incorrectly addressed and that are returned after an attempted delivery to an intended recipient. Combining Second-Generation with PARS to achieve the functionality in PARS of receiving an incorrectly addressed mail piece that is returned after an attempted delivery to an intended recipient, to then obtain a correct address of an intended recipient, would change the principal operation of PARS. The extent of this change is highlighted by considering (a) the nature of the problem that PARS was trying to solve, and (b) the fact that Second-Generation teaches away from the approach to processing undeliverable mail items that is disclosed in PARS (and vice-versa).

In contradistinction to these facts, the Office Action goes on and contends that:

> Furthermore, it would have been prima face obvious to one having ordinary skill in the art at the time the invention was made to modify USPS Solution to include receiving those items of the plurality of mail items that are returned as being undeliverable, as disclosed in Second-Generation, since the claimed invention is merely a combination of old elements, and in the combination each element merely would have performed the same function as it did separately, and one of ordinary

PAGE 97
Application No.: 90/008,470
Docket No.: 031073.00001-US04
Filing Date: January 31, 2007
Title: *Ex Parte* Reexamination of Patent No. 6,826,548

The Patent Owner respectfully submits that it would not have been obvious to a skilled artisan in 2001 to select the elements of the references relied upon by the examiner and to combine them into the invention claimed in the '548 patent. Large organizations that receive thousands of returned mail items on a monthly basis did not have the benefits that the present invention provides. Even prior art that purported to address return mail problems, such as the system and method described in PARS, did not provide a return mail solution for large organizations that directed return mail to a return mail service provider for processing. The '548 patent disclosed innovations such as encoding intended recipient information such as the name and address of an addressee, and scanning and decoding encoded data to determine if the sender wants a corrected address provided with which to update the sender's records. These significant improvements reduce the mail processing burden on the sender, while also advantageously electronically transmitting to the sender an updated intended recipient addresses to prevent future returned mail. These are functions which would not have been achieved by the simple combination of two disparate systems -- one that is directed to preventing the receipt of returned mail (PARS), and another that is directed to processing returned mail (Second-Generation); on the contrary, the innovations disclosed in the '548 patent are directed to going beyond a simple identification of undeliverable mails items prior to attempted delivery by the U.S. Postal Service.

For the reasons given above the Patent Owner requests that a Notice of Intent to Issue Ex Parte Reexamination Certificate be issued for the presently pending claims.

Dated: June 8, 2010

Respectfully submitted,

By _____
Paul J. Berman
   Registration No.: 36,744
Gregory S. Discher
   Registration Number, 42,488
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
(202) 662-6000
Attorney for Patent Owner