# In the United States Court of Federal Claims

No. 11-130 C

(Filed **Under Seal** October 22, 2012)

(Reissued November 16, 2012)[1]

| | | |
|---|---|---|
| RETURN MAIL, INC., | ) | |
| Plaintiff, | ) | Motion to Disqualify Proposed Expert |
| v. | ) | Witness. |
| | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

*George F. Pappas*, Washington, D.C., for plaintiff. *Sarah L. Wilson*, *Uma N. Everett*, of counsel.

*John A. Hudalla*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *John Fargo*, Director, *Gary L. Hausken* and *Conrad J. DeWitte, Jr.*, of counsel, and *Michael Francis Kiely*, agency counsel.

---

## ORDER

**Merow**, *Senior Judge*

This matter is before the court on Defendant's Motion to Disqualify Plaintiff's Proposed Expert Witness, Mr. Angelo Wider, and Motion for a Protective Order Preventing His Access to Protected Information (ECF No. 30, filed under seal on April 30, 2012); Plaintiff's Opposition (ECF No. 34, filed under seal on May 17, 2012); and Defendant's Reply (ECF No. 35, filed under seal on May 29, 2012). Oral argument was held on August 29, 2012.

---

[1]   Because this Order might have contained confidential, proprietary or other information subject to the Protective Order entered in his action, it was initially filed under seal. The parties were requested to provide proposed redactions on or before October 31, 2012. In their joint Status Report Regarding Redactions no redactions were requested. (ECF No. 43 filed on October 31, 2012). Therefore, the court is releasing the Order in full.

These submissions contain defendant's position concerning plaintiff's retention of Mr. Wider as an expert witness or expert consultant in this case and his access to protected information.

Mr. Wider retired in March of 2010 as an executive with the United States Postal Service (USPS) after twenty-nine years of service, culminating as Manager, Finance Administration, Headquarters, Washington, DC, a position he held from March of 2000 until March of 2010 in which he "overs[aw], manage[d] and coordinate[d] the administrative operations of the [USPS's] Chief Financial Officer." (Def.'s Mot. Disqualify Ex. D 1, ECF No. 30-4 & Def.'s Mot. Disqualify 6, ECF No. 30 (brackets in original).)

Despite earlier indications to the contrary,[2] plaintiff represented that Mr. Wider would not be offering expert testimony at the Claims Construction Hearing in this matter scheduled for December 20, 2012, but might offer expert testimony in subsequent proceedings in this case, thus necessitating resolution of the disqualification issues presented.

As discussed more fully below, defendant's motion is denied without prejudice to renewal should specific issues in this regard arise.

## Background

Plaintiff Return Mail, Inc. (RMI) seeks compensation for the alleged unauthorized use and manufacture by, or for, the USPS of certain methods and systems for providing address change service promoted under the registered trademark OneCode ACS (address change service)[3] and implemented by a system known as the Postal Automated Redirection System (PARS). RMI alleges that the OneCode ACS service and the PARS system infringe seventeen claims of United States Patent No. 6,826,548 C1 (the "'548 Patent") and its Reexamination Certificate directed to methods and systems for processing returned and undeliverable mail,

---

[2]   Mr. Wider was listed as a possible witness in RMI's Initial Disclosure of Experts for Claim Construction.  (Def.'s Mot. Disqualify Ex. B1, ECF No. 30-2.)

[3] In filings, the address change service is referred to both as "ONECODE" and "OneCode." For consistency, "OneCode" is used herein.  To the extent there is any difference, for the purpose of this Order, interchangeability is presumed.

including steps for obtaining the updated address of the intended recipient, which substantially reduce the significant cost to the USPS of handling returned mail. Defendant has denied infringement and asserted several affirmative defenses, including that the claims of the patent-in-suit are invalid in view of prior art. (Def.'s Mot. Disqualify 2, ECF No. 30 (citing Pl.'s Initial Disclosure of Asserted Claims); Pl.'s Opp'n Mot. Disqualify 1, ECF No. 34.)

RMI states that the USPS met with RMI representatives several times to discuss licensing RMI's methods and processing inventions but no agreement was reached. Rather, according to RMI, defendant sought to invalidate RMI's patent by instituting an ex parte reexamination proceeding at the Patent and Trademark Office (PTO). Those efforts were unsuccessful, and on September 27, 2010, the PTO issued the '548 Reexamination Certificate, certifying as patentable twenty-five claims, some of which are asserted in this case. (Pl.'s Opp'n Mot. Disqualify 1, ECF No. 34.)

Defendant contends that in the positions he held with the USPS, Mr. Wider was privy to confidential and/or privileged information relevant to this case that precludes his expert testimony for RMI and his access to protected information. Alternatively, defendant contends that if Mr. Wider is not disqualified, he should be prevented from accessing protected information. (Def.'s Mot. Disqualify 8, ECF No. 30 (citing *Lacroix v. BIC Corp.*, 339 F. Supp. 2d 196, 201 (D. Mass. 2004).)

RMI responds that defendant did not meet its heavy burden on disqualification and failed to point to any specific disclosure of confidential, proprietary or privileged information relevant to the instant litigation. Rather, RMI represents that any data that Mr. Wider would rely upon for his expert opinions would be public.

## Legal Standards

The court's inherent discretion to disqualify an expert witness is used sparingly. *Koch Refin. Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996). *See Hanlon v. Sec'y of Health & Human Servs.*, 191 F.3d 1344, 1350 (Fed. Cir. 1999) (stating that disqualification is not mandated unless it is reasonable to conclude that the proposed expert possessed confidential information that would prejudice the moving party)(citing *Koch*)). In situations other than an expert switching sides, a clear-cut case for disqualification, the parties concur that generally, disqualification requires an affirmative response to two inquiries: (1) did Mr. Wider

and the USPS have a confidential relationship; and (2) in the course of that relationship, did the USPS disclose any privileged or confidential information relevant to the instant proceeding?  (*Id.*)  A third factor has been applied, namely a balance between the integrity of the judicial system, the protection of Mr. Wider's ability to pursue his professional calling and respect for RMI's right to retain an expert of its own choosing.  85 F.3d at 1182.  As for the latter, RMI represents that there are few experts knowledgeable about the USPS willing to go adverse to that monopoly, thus tilting the scale in favor of denying disqualification.

Also pertinent are the ethical restrictions on former government employees contained in 18 U.S.C. § 207 including a permanent ban on involvement in matters in which they "participated personally and substantially," and for two years for certain matters that were "actually pending under his or her official responsibility" within one year of his or her last date of service.  18 U.S.C. § 207(a)(1)(B) & (a)(2)(B).  Disqualification authority also rests in Rule 26(c) of the Rules of the Court of Federal Claims (RCFC) which has been used "to prevent the expert from accessing 'confidential research, development, or commercial information' related to a prior business relationship."  (Def.'s Mot. Disqualify 6, ECF No. 30 (citations omitted).)

**Discussion**

Relevant both to the question whether the USPS had an objective expectation of a confidential relationship with Mr. Wider, and whether confidential or privileged information relevant to the instant case was disclosed to him (the second prong discussed *infra*) is his position history with the USPS.  Mr. Wider was the Manager, Finance Administration, Headquarters, a position he held for the last ten years of his twenty-nine year career with the USPS.   His resume listed his duties and responsibilities as:

Oversees, manages and coordinates the administrative operations of the Chief Financial Officer:

-Coordinates functional reviews of the Controller, Treasurer, Purchasing and Materials, Chief Technology Officer and, Information Technology.
-Managing the Revenue Assurance Program[.]
. . .

-Administering Corporate Succession Planning for Finance.
-Finance Administration supports the Chief Financial Officer (CFO) by providing decision support, program management and by representing, leading and/or coordinating special projects for the CFO.
-Serves as Secretary of the Finance Executive Committee[.]
-Serves as Executive Liaison to Human Resources[.]
-Member Intellectual Property Committee[.]
-Member of the Threat Assessment Team[.]
-Manages and coordinates emergency evacuation, safety procedures and COOP for the CFO.

(Def.'s Mot. Disqualify Ex. D1-2, ECF No. 30-4.)   His previous position was Manager, Revenue Assurance where he was responsible for assuring the proper collection of revenues.   He majored in Telecommunications Operations and Management in his Master of Science Degree at George Washington University. (*Id.* at D1.)

The parties have divergent positions on whether a confidential relationship existed between Mr. Wider and the USPS.   Defendant agrees that the standard for determining the existence of a confidential relationship is objective – the inquiry being whether it was, or is, objectively reasonable for the USPS to conclude a confidential relationship existed.

Defendant generally cites the ethical restrictions of 18 U.S.C. § 207 and Mr. Wider's twenty-nine years at the USPS, culminating in upper management at a high executive level, as imposing a confidential relationship.

RMI counters that Mr. Wider did not sign a non-disclosure or a confidentiality agreement, and points to USPS guidance to former employees (presumably including executives at Mr. Wider's level as the memorandum is not limited) encouraging use of skills and knowledge acquired at the USPS for future employment – the antithesis of a confidential relationship.   That guide provides that a former employee's work is not considered confidential unless otherwise specified.   (Pl.'s Opp'n Def.'s Mot. Disqualify Ex. B, ECF No. 34-2 ("Post Employment Restrictions Frequently Asked Questions").)   "Your postal knowledge and expertise may be exactly why your new

employer wanted to hire you in the first place.  Please note that you can share your knowledge, skills and ideas with your new employer." (*Id*. at B2.)  Former employees are, however, warned not to disclose certain information subject to a non-disclosure agreement.  "[P]roprietary information should never be disclosed.  For example, if you learned something while you were still a federal employee that is protected by a non-disclosure agreement, you can't disclose that information simply because you have left federal service." (*Id*. at B3.)  From these statements, RMI concludes that the USPS had no objective expectation of confidentiality and the motion to disqualify should be denied for failure to meet the first inquiry – existence of a confidential relationship.

Defendant responds that the guide RMI relies upon also warns that post-employment restrictions include any "particular matter" in which that employee participated "personally and substantially" while at the USPS.  (Def.'s Reply 3, ECF No. 35) (citing Pl.'s Opp'n Def's Mot. Disqualify Ex. B1-2, ECF No. 34-2).)

The statutory ethical restrictions do not apply, RMI asserts, because Mr. Wider had no substantial involvement with the infringement matters presented in this litigation and this patent dispute was not pending at the time he left USPS employment.

Because of the court's findings hereinafter, it is not necessary to determine whether the USPS had an objectively reasonable expectation of a confidential relationship with Mr. Wider.

The second inquiry is whether the USPS disclosed any confidential or privileged information to Mr. Wider that is relevant to the issues in this patent case.  "The Federal Circuit has stated that disqualification is not mandated unless it is reasonable to conclude that an expert possessed confidential information that would prejudice the moving party." (Def.'s Mot. Disqualify 5, ECF No. 30 (citing *Hanlon*).)  "Generally, the 'confidential or privileged information disclosed' in the second prong of the test is interpreted to mean information that is relevant to the case." (*Id.* (citing *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216-JRG, 2012 WL 708354, at *2 (E.D. Tex. 2012) and *Palomar Med. Techs., Inc. v. Tria Beauty, Inc.*, No. 09-11081-RWZ, 2012 WL 517532, at *2 (D. Mass. Feb. 15, 2012).)  In this regard, although not addressed by the parties, relevance would seem to be limited to Mr. Wider's expertise and expert opinion, as opposed to matters for which

he could be a fact witness, as it is his presumptive expert opinion that is the subject of the disqualification motion.

Asserted to support defendant's position that substantial confidential data relevant to the litigation was disclosed to, and known by, Mr. Wider, is the Declaration of Audrey K. Conley, Customer Service Support Analyst with the Office of Address Management at the USPS National Customer Support Center in Memphis, Tennessee. Ms. Conley was a co-presenter with Mr. Wider at a March 2005 National Postal Forum (NPF) in Nashville, Tennessee, a large public exhibition and trade show.[4] At that forum, public compliance with the "USPS's Move Update" standards, which require large mailers seeking certain discounts to implement USPS-mandated methods of ensuring up-to-date mailing lists was promoted. Address accuracy ("address hygiene") was touted as mutually beneficial, saving costs both to the private mailer and to the USPS. According to her Declaration, monitoring of Move Update compliance was:

> primarily implemented at the USPS via a system known as [PARS]. Mr. Wider was responsible for the portion of the presentation whose [sic] slides had the header "REVENUE ASSURANCE." I understand that Revenue Assurance was the name of the USPS office for which Mr. Wider worked at the time of presentation. As indicated in the 'REVENUE ASSURANCE" slides, Mr. Wider's office used "leads" generated by interfacing with the PARS system and the Office of Address Management to determine compliance.

(Def.'s Mot. Disqualify Ex. F1-2, ECF No. 30-6 (paragraph numbering omitted).)

RMI contends these slides are indicative of the public disclosure of these matters, taking them out of the realm of confidentiality or, alternatively, waiving any confidentiality that may have existed. Defendant counters that the Declaration evidences Mr. Wider's knowledge of the underlying technical aspects of this system

---

[4] The National Postal Forum disseminates information about its services in order to encourage their broad and efficient use. (Pl.'s Opp'n Mot. Disqualify Ex. E1, ECF No. 34-5 ("NPF's mission is '[t]o assist the United States Postal Service in building relationships with and educating mailers in the most effective and efficient use of the products and services offered by the United States Postal Service.'").)

and service, not just the financial ramifications resulting from the implementation and interface between the system and the service.

The Revenue Assurance slides referenced by Ms. Conley list basic information about Move Update standards including Federal Register notice as well as requirements in a domestic mail handbook including a 185-day window for updated addresses. (*Id*. at F37-38.) The remaining points are generally consistent with Mr. Wider's concern for the revenue, more precisely revenue-saving efforts and the interface between PARS and OneCode ACS that creates "leads" to enable monitoring. Neither the ability to monitor large mailers' compliance with address changes through data leads produced by the PARS service and OneCode ACS system, nor the listing of the steps of the "PARS and Address Management Interface" on the slides[5/] establishes that Mr. Wider possessed, understood, or was privy to and cognizant of the underlying technical workings of the primary technology that produced those leads, or that such was confidential or privileged. Rather, the slides appear consistent with his revenue compliance expertise. (*Id*. at F38-48.)

Performance Evaluation statements cited by defendant are not inconsistent with Mr. Wider's revenue assurance role. Rather, they conform to his utilization of a derivative end product of the infringing service and system to survey private customer compliance. This evaluation noted that he "'work[ed] with a cross functional group on the implementation of the PARS interface;'" and "completed a PARS interface application prototype.'" (Def.'s Mot. Disqualify 3, ECF No. 30 (citing Ex. E, Wider Performance Reviews) (brackets in original).) "[H]e 'continued to work with Engineering and Technology Management on the One Code implementation.'" (*Id*.) Neither working with other departments to implement the system that would create

_____

[5/]   Steps depicted were:

- Mail at origin is processed through the [PARS.]
- Mail is checked for a Change of Address (COA) on file with Address Management[.]
- If COA on file, mail is redirected to address.
- If COA on file and older than 185 days, an image is captured and a tally started.
- If tally is greater than 100, several images are stored.
- Files are sent to Revenue Assurance server for analysis and follow-up.

(Def.'s Mot. Disqualify Ex. F-43, ECF No. 30-6.)

the leads to assure revenue, nor completion of an interface application prototype, suffice to demonstrate that Mr. Wider had access to confidential, proprietary or privileged data about the OneCode ACS address change service or the PARS system that implements the service.  Indeed defendant does not point to anything in his resume indicative of the level of technical expertise to do so.

To the extent it is contended that Mr. Wider routinely worked on the underlying PARS and/or the accused OneCode ACS and not just the data, products or leads produced from their interface, RMI responds that all aspects of PARS, including extensive technical, operation and functional details, were widely and publically disseminated, as the USPS sought to encourage use.  (Pl.'s Opp'n Def.'s Mot. Disqualify Ex. C, ECF No. 34-3 (One Code ACS Technical Guide, Publication 8(b), represented as *available at* https://ribbs.usps.gov/acs/documents/tech_guides/ PUB8B.pdf); Ex. D, ECF No. 34-4 (Christensen Associates, Summary Report: Volumes, Characteristics, and Costs of Processing Undeliverable-as-Addressed Mail and Personal-Knowledge-Required Mail, dated May 2007).)[6]  In oral argument, counsel represented that Mr. Wider's expert opinion would be based on publically-available data.

Defendant cites snippets of Mr. Wider's 2005 performance evaluation listing his accomplishments including his representation of the CFO at three meetings of the USPS Intellectual Property Board (IP Board) "with emphasis on licensing Postal trademarks, copyrights and the commercialization of existing patents" where he"[r]eviewed and made recommendations for revenue generating activities for Intellectual Property functional submissions."  (Def.'s Mot. at E7, ECF No. 30-5.) Defendant contends that at those meetings he was exposed to relevant confidential and privileged information or discussions concerning or related to the USPS's alleged infringing products, which constitutes substantial relevant participation in the pending matter, namely on questions related to patent invalidity in terms of prior art, or actual infringement, sufficient to invoke the ethical restrictions of 18 U.S.C. § 207. Specifically, defendant offers the Declaration of Christopher T. Klepac, Attorney with the Law Department of the USPS.  Mr. Klepac's Declaration asserts that he was a

---

[6] Whether this disclosure was before, during or after asserted confidential and relevant data was assertedly disclosed to Mr. Wider, is immaterial.  Availability of this technical data (which the court has not substantively reviewed and makes no determination of whether it completely or substantially discloses all that the USPS would keep confidential) is either primary evidence that it was non-confidential, or if initially confidential, its disclosure removed or waived that specter.

member of the IP Board from its inception in 2003 until June of 2008 and recalled Mr. Wider was a member beginning in 2003 or 2004.  In relevant part his Declaration continues:

> 5.  One of the functions of the [IP Board] was to review incoming USPS invention disclosures and to make decisions on which inventions the USPS would seek to patent.  As part of that process, [IP Board] members reviewed detailed technical descriptions of the inventions and made recommendations regarding patent prosecution based on members' perceived value of the invention to the USPS.  The invention disclosures were considered proprietary USPS information.

> 6.  Although the invention disclosures reviewed by the [IP Board] came from all functional areas of the USPS, many of them arose from the Engineering and Address Management functions.  Some of the disclosures reviewed **related** to the Postal Automated Redirection System [PARS] and address change service.

> 7.  Because the work of the [IP Board] was performed at the behest of the USPS Law Department, based on the direction of the USPS Executive Committee, the communications of the [IP Board] were considered legally privileged.

(Def.'s Mot. Disqualify Ex. G1-2, ECF No. 30-7 (emphasis supplied).)

RMI responds that Mr. Klepac's Declaration lacks specificity and fails to define what Mr. Wider's role was or when his membership on that Board ended.  No minutes, agendas or attendance lists are submitted, nor is there any general description of any confidential or privileged matter discussed.  (Pl.'s Opp'n Mot. Disqualify 10-11, ECF No. 34.)

Defendant's burden is not met with generalities.  *See Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 191 (S.D.N.Y. 1988) (noting that the party who claims a privilege may not meet its burden by "'mere conclusory or *ipse dixit* assertions'") (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)); *Owen v. Gen. Motors Corp.*, No. 06-4067, 2007 WL 1101194, at *4 (W.D. Mo. Apr. 12, 2007) (denying motion to disqualify an expert where General Motors did not identify "any specific

information which it claims is confidential; i.e., shared with [the expert] and not with persons outside GM."). Neither is defendant's burden met by the presence of USPS counsel at the IP Board meetings Mr. Wider attended. *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001) ("[D]iscussions between . . . counsel and experts do not carry the presumption that confidential information was exchanged."); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (quoting *English Feedlot, Inc. v. Norden Labs., Inc.*, 833 F. Supp. 1498, 1501 (D. Colo. 1993) ("'Experts are not advocates in the litigation but sources of information and opinions.'"). RMI suggests that specificity akin to a privilege log could have been provided to the court for *in camera* review. No such request was made.

Specifically, as RMI points out, Mr. Klepac's Declaration does not identify any specific "invention description" or IP Board "discussion" to which Mr. Wider was privy and does not refer to confidential or privileged information related to the aspects of PARS or OneCode ACS that RMI alleges infringes on the claims at issue. Conclusory statements that there were confidential disclosures of invention technical minutia of matters that "related" to the alleged infringement by the USPS service or system is not enough. To the extent Mr. Wider recalls and relies on any "related" disclosures made in a privileged setting and not otherwise publically-disclosed, may be addressed at that time.

To the extent disqualification sought is based on disclosure in a confidential or proprietary setting of the technical components, elements or basis of the underlying infringing service or system, RMI contends the inquiry is irrelevant because "[g]eneral assertions regarding 'purely technical information,' . . . are not considered confidential for the purposes of this analysis." (Pl.'s Opp'n Mot. Disqualify 5, ECF No. 34 (citing *Koch*, 85 F.3d at 1182).) *See also Popular, Inc. v. Popular Staffing Servs., Corp.*, 239 F. Supp. 2d 150, 153 (D. P.R. 2003) ("purely technical information is not confidential.").

Recently, the definition of confidential information in this context was examined, and the exclusion of technical information, recognized by several courts, was rejected, in the situation presented there (and here) "where an expert was a former employee and learned of technical information that relates to the lawsuit, most courts have disqualified the expert." *Thompson, I.G., L.L.C. v. Edgetech I.G., Inc.*, No. 11-12839, 2012 WL 3870563, at *5 (E.D. Mich. Sept. 6, 2012).

A number of other cases support [the movant's] position that technical knowledge learned by a previous employee is considered confidential information. *See, e.g. Sensormatic Elec. Corp. v. WG Sec. Prods.*, No. 2:04–Cv–167, 2006 WL 5111116, at *3 (E.D. Tex., Feb. 9, 2006) (disqualifying named inventor of patent from serving as a patent consultant against his former employer); *Pellerin v. Honeywell Intern. Inc.*, No. 11 CV1278, 2012 WL 112539 (S.D. Cal., Jan. 12, 2012) (disqualifying former employee as expert and reasoning that decision "was not based on [former employee's] access to privileged information but confidential information as well"); *Oracle Corp. v. DrugLogic, Inc.*, No. C–11–00910, 2012 WL 2244305, at *7 (N.D. Cal., June 15, 2012) (disqualifying former consultant from acting as expert because "various confidentiality obligations" would be breached); *Wang Laboratories, Inc. v. CFR Associates, Inc.*, 125 F.R.D. 10 (D. Mass. 1989) (disqualifying former employee who possessed information about employer's computer system through his employment); *Lake Cherokee Hard Drive Tech., L.L.C. v. Bass Computers, Inc.*, 2012 WL 708354 (E.D. Tex., Mar. 5, 2012) (disqualifying former high-level employee because he gained technical information from his prior employment); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, No. 09–1827, 2010 Dist. LEXIS 54523, at *3–7 (S.D. Tex., June 2, 2010) (disqualifying former employee because he would use confidential knowledge gained during his employment when evaluating employer's confidential documents). The Court adopts the rationale contained in the cases above and finds there to be a distinction between "confidential" and "privileged" information.

*Id.* at *6.

Noted as exemplary of those cases, was *Eastman Kodak Co. v. AGFA-Gevaert N.V.*, No. 02-CV-6564, 2003 WL 23101783, at *1 (W.D.N.Y. Dec. 4, 2003) where a former employee was disqualified, and quoting from *Eastman*, the following was noted about the disqualified expert:

H[e] was not a part-time cashier in Kodak's company store.  He was a senior scientist employed by Kodak for eighteen years who was an active member of a closed group of researchers charged with

developing, creating and testing "T–Grain" photographic emulsions. The work of this research group involved the use and sharing of highly confidential information about high aspect ratio silver halide tabular grains and the utilization of such tabular grains in making photographic emulsions. The record here certainly supports a finding that the work of the "Silver Curtain" research group, of which [he] was a member, concerned "the specific technology at issue in this lawsuit," as the court in *Greene* demanded.

*Thompson,* at *5 (citing *Eastman Kodak*, 2003 WL 23101783, at *4 (citing *Greene, Tweed of Del. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 426 (E.D. Pa. 2001))). The difference here is that Mr. Wider was not the inventor of the alleged infringing service or system but, his focus was on the derivative product from a revenue perspective.

Defendant's Reply expansively adds that Mr. Wider was also exposed to unspecified confidential, proprietary or privileged "invention disclosures and **intellectual property strategy**." (Def.'s Reply 4, ECF No. 35 (emphasis supplied).) Again, while lacking in specifics, defendant relies on the Klepco Declaration to establish that privileged discussion about whether to seek patent protection for unspecified related USPS inventions at one or more unspecified IP Board meetings is sufficient to broadly preclude Mr. Wider's unspecified expert testimony. In this context, privileged communications "include discussion of trial strategies, weaknesses of each side, the role of the witnesses to be hired" as well as "anticipated defenses." *Popular, Inc. v. Popular Staffing Servs. Corp.*, 239 F. Supp. 2d 150, 153 (D. P.R. 2003); *see also Lyman v. Pfizer, Inc.*, No. 2:09-cv-262, 2011 WL 3843956, at *3 (D. Vt. Aug. 30, 2011).

[c]onfidential information essentially is information of either particular significance or that which can be readily identified as either attorney work product or within the scope of the attorney-client privilege. Confidential information may include discussion of one party's strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses.

*Palomar Med. Techs., Inc. v. Tria Beauty, Inc.*, No. 09-11081-RWZ, 2012 WL 517532, at *4 (D. Mass. Feb. 15, 2012) (alterations in original) (citing *Twin City Fire Ins. Co., Inc. v. Mitsubishi Motors Credit of America, Inc.*, No. SACV 04–0043 CAS, 2006 WL 5164249, at * 3 (C.D. Cal. Nov. 6, 2006)).

Initially, Mr. Klepco's presence at committee meetings does not automatically create a privilege. The attendance of an attorney at a corporate meeting, does not automatically render everything said or done at that meeting privileged. *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 379 (N.D. Ill. 1999) (citing *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993)).

Mr. Wider affirmatively denies any knowledge of relevant confidential information concerning the USPS technology alleged as infringing. If that changes, it can be addressed. Understandably, given his resume and career focus was on budgetary and financial issues, while the IP Board would review new technology or intellectual property that the USPS might seek to protect through patents, copyrights or trademarks, the focus, or at least his focus was on revenue potential.

> [M]y role on the IP Board was generally limited to assessing existing and/or new processes or technology from a revenue assurance or financial feasibility standpoint. As a specific example, it was, in part, my responsibility to work with others in the Postal Service to ensure that mailers were complying with the mailing requirements, from a financial perspective, of new technologies or processes by appropriately updating their mailing lists to include or omit certain mailing data.

(Pl.'s Opp'n Mot. Disqualify Ex. A1-2, ECF No. 34-1.) To the extent any expert testimony from Mr. Wider would address revenue or cost assurance, a basis for disqualification has not been established. *But see Rice v. United States*, 39 Fed. Cl. 747 (1997) (denying plaintiff, a competitor, access to confidential technical data of alleged infringement).

Absent specifics, and presented with Mr. Wider's denial and limited recollection of these meetings, as well as his career focus and expertise, defendant has not established that relevant confidential, proprietary or privileged disclosures were made to Mr. Wider, or that he was privy to confidential or privileged attorney/client

discussions concerning "intellectual property strategy."  Specific objections can be raised in subsequent proceedings in this matter, including but not limited to Mr. Wider's qualifications to opine on what may be a legal issue on prior art or infringement, or his testimony as to what he does not now, but may later recall. Mindful that the nature of Mr. Wider's expert report or testimony is not yet known, if it encompasses the technical workings of the OneCode ACS and PARS itself, as opposed to data or "leads" generated from the interaction or "interface" between these two components, then the limited (or lack of) experience in this regard, is an issue that could be raised on voir dire.

Furthermore, defendant has not supplied a sufficient basis on which to conclude that Mr. Wider's employment at the USPS, and any confidential disclosures therein, addressed the "particular matter" now in litigation, and if so, whether they were sufficiently personal and substantial so as to call for the permanent bar established by 18 U.S.C. § 207(a)(1).  And, as it has been more than two years since Mr. Wider's retirement, the two-year ban is inapt.

Relief under Rule 26(c) has also not been established.  In *Lacroix v. BIC Corp.*, plaintiff's proposed expert was previously retained as an expert by the defendant in similar, but unrelated matters where he had signed a non-disclosure agreement which provided in part that the expert "may have access to certain information that may be confidential or proprietary in nature and that he agrees not to disclose or use the information outside of [defendant's] matters." *Lacroix v. BIC Corp.,* 339 F. Supp. 2d 196, 198 (D. Mass. 2004).  Some of the data disclosed was directly relevant to his expert opinion for plaintiff.  Noting the general reluctance to disqualify an expert, the court denied the motion to disqualify because the "parties never communicated on matters of any substance relating to the specifics of this case." *Id.* at 201. Nevertheless, the court felt "compelled" to enforce the non-disclosure agreement, prohibiting the expert from testifying or utilizing any information thereunder.  Given the absence of a non-disclosure or confidentiality agreement or any specific confidential or privileged disclosures relevant to this litigation such that disclosure would be prejudicial to defendant, the authority is inapt.

In sum, these matters can better be addressed in connection with any actual direct testimony that Mr. Wider presents, together with appropriate cross-examination.  The context of any relationship between Mr. Wider's current retention and his tenure at the USPS can be fully developed so that an informed decision can

- 15 -

be reached as to preclusion or limitation of any expert opinion and any application of 18 U.S.C. § 207.[7]

If Mr. Wider is aware of confidential technical, privileged or proprietary information, that bell cannot be unrung, but the extent and source of that information can be explored through discovery and/or cross-examination. Defendant is not suggesting that such confidential data would not be made available to another of RMI's experts  Mindful of the expense and potential prejudice particularly to RMI should Mr. Wider be retained as an expert and then subsequently disqualified, RMI at its option, may make Mr. Wider available for limited deposition or other discovery as to these matters. When Mr. Wider provides an expert report (RCFC 26(a)(2)(B)) his deposition will undoubtedly be taken. RCFC 26(b)(4)(A). If it were to be determined in expert deposition of Mr. Wider or in testimony before this court that his opinion is derived in substantial part from any confidential or privileged data, then this motion may be renewed to the extent of any portion of his opinion derived therefrom, or another appropriate request for sanctions initiated.

Accordingly, absent further order of this court, Mr. Wider may be tendered as an expert witness in this matter in accordance with the Federal Rules of Evidence, but the extent to which his testimony will be afforded evidentiary weight may be addressed in subsequent briefing. That is, should defendant establish that Mr. Wider's testimony or expert opinion, or any portion thereof, violates 18 U.S.C. § 207, or that any testimony or opinion is based in more than an insubstantial way on any relevant confidential, privileged or proprietary information disclosed to Mr. Wider by the USPS, the question whether the testimony or portion may then be utilized as a basis for a finding(s) of fact shall be addressed in subsequent briefing and/or argument. Also, as there is a Protective Order in place, and expert testimony could be requested to be presented under seal thereby minimizing possible prejudice from any disclosure of confidential information. *In camera* submissions are also possible. Furthermore, no cause has been shown to deny Mr. Wider access to Protected Information subject to his submission to the Protective Order in this matter. If specific issues arise concerning his access to particular documents, a specific Protective Order can be sought,

---

[7] In this regard defendant's negative suggestions relating to Mr. Wider's visits to his former place of employment are not particularly constructive.

Accordingly, it is **ORDERED** that Defendant's Motion to Disqualify Plaintiff's Proposed Expert Witness, Angelo Wider, and Motion for a Protective Order Preventing His Access to Protected Information (ECF No. 30) are **DENIED** as provided herein.

s/ James F. Merow
James F. Merow
Senior Judge