# In the United States Court of Federal Claims

No. 11-130 C

(Filed October 4, 2013)

| | |
|---|---|
| RETURN MAIL, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

---

## ORDER

This order, in accord with *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), addresses the claim terms and phrases of United States Patent No. 6,826,548 C1, for which the parties have selected and proposed differing constructions.

---

## Background

Incomplete or incorrect addresses on material mailed with the United States Postal Service ("USPS") result in a large volume of returned mail, which is considered to comprise a costly problem, particularly for high volume mailers. Plaintiff asserts that, commencing in 2000, Ralph Mitchell Hungerpiller and Ronald C. Cagle began developing a solution to the returned mail problem. In 2001, they filed an application with the United States Patent and Trademark Office ("PTO") and in 2004, were awarded U. S. Patent No. 6,826,548 ("'548 Patent"). The '548 Patent was subsequently assigned to plaintiff. Return Mail, Inc. ("RMI") approached the USPS about licensing the invention, and the USPS requested that plaintiff partner with several large mailers to test integration with USPS systems. The USPS subsequently declined to complete tests that plaintiff arranged, and began providing its own address change service, OneCode ACS to process returned mail. The USPS petitioned the PTO to grant an *ex parte* reexamination of the '548 Patent. The PTO conducted a reexamination of the '548 Patent adding newly presented claims, subsequently numbered as Claims 39-63. On January 4, 2011, the PTO issued a Reexamination Certificate as U. S. Patent No. 6,826,548 C1. Plaintiff now contends that the USPS performs each step of the method of one or more of the claims, of the '548 Patent or '548 Reexam Certificate, through its use of the Postal Service's

OneCode ACS.  Plaintiff's Infringement Claim Chart cites Claim Nos. 39-44 in this regard.  Def.'s Cl. Constr. Br., Doc. No. 44-11.

The '548 Patent claim terms and phrases the parties assert require construction and their proposed constructions are as follows:

| Relevant Claim Term | RMI's Proposed Construction | USPS's Proposed Construction |
|---|---|---|
| <u>Claims 39-42</u>: "subsequent to mailing" | Plain and ordinary meaning.<br><br>To the extent that any construction beyond plain and ordinary meaning is required, RMI proposes the following construction: "after mailing." | After processing by the postal service. |
| <u>Claim 39</u>: "returned mail items" | Items that are mailed and come back to a post office facility. | Mail items returned to the sender after processing by the postal service. |
| <u>Claim 40</u>: "mail items returned" | Items that are mailed and come back to a post office facility. | Mail items returned to the sender after processing by the postal service. |
| <u>Claims 40-43</u>: "undeliverable mail items" | Mail items that fail attempted delivery. | Mail items that could not be deliverable by the postal service. |
| <u>Claim 42</u>: "identifying, as undeliverable mail items" | Identifying, mail items that fail attempted delivery. | Identifying, mail items that could not be delivered by the postal service. |
| <u>Claims 39-42</u>: "mail items that are returned subsequent to mailing as undeliverable" | Items that are mailed and come back to a post office facility after failed attempted delivery. | Mail items returned to the sender because they could not be delivered by the postal service. |
| <u>Claim[] 42</u>: "receiving from a sender" | Receiving from a subscriber | A return mail service provider receives from a subscriber |
| <u>Claims 39-41</u>: "return mail | Any entity that performs | An entity that processes |

- 2 -

| service provider" | electronic return mail processing. | mail returned to the sender by the postal service. |
|---|---|---|
| <u>Claims 39-44</u>: "address" | Plain and ordinary meaning.<br>To the extent that any construction beyond plain and ordinary meaning is required, RMI proposes the following construction: "The location to which the USPS is to deliver or return a mailpiece." | Street name and house number, city, state, and postal code. |
| <u>Claims 39, 42</u>: "decoding"<br><br><u>Claim 41</u>: "decode" | Decipher information into useable form | Convert information into useable form. |
| <u>Claim 40</u>: "decoded information["] | Deciphered, us[e]able information | Information converted into useable form. |
| <u>Claim 40</u>: "decoded data" | Deciphered, useable data | Information converted into useable form. |
| <u>Claim 42</u>: "decoded data" | Deciphered, useable data | Information converted into useable form. |
| <u>Claim 42</u>: "if the sender wants a corrected address provided" and "if the sender does not want a corrected address provided." | Plain and ordinary meaning. | Plain and ordinary meaning (mutually exclusive alternatives) |
| <u>Claim 42</u>: "posting return mail data records on a network that is accessible to the sender." | Plain and ordinary meaning | Posting decoded data on a network that is accessible to the sender |

Pl.'s Cl. Constr. Br., Doc. No. 41 at 9, 13, 18, 22, 23, 25, 27, 32, 33, 37.

## Discussion

Determining patent infringement is a two-step process.  "[T]he court first interprets the claims to determine their scope and meaning." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012) (citing *Cybor*

*Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)[1]). The claims "define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Claim construction, the initial step in patent litigation, assists in defining the invention prior to addressing alleged infringement because the scope of a patent is defined by the words of the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004). Claim construction is a matter of law.[2] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 372 (1996). *See also Cybor Corp.*, 138 F.3d at 1456); *Radio Sys. Corp. v. Lalor,* 709 F.3d 1124, 1127 (Fed. Cir. 2013).

> We begin our analysis with the language of the claim. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). "The words of a claim 'are generally given their ordinary and customary meaning,'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1312-13 (internal citations omitted). "The claims, of course, do not stand alone. Rather, they are part of 'a fully, integrated written instrument,' consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Id*. at 1315 (quoting *Markman*, 52 F.3d at 978, 979).

*Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1320 (Fed. Cir. 2013).

---

[1] Recently, the Federal Circuit, in granting a petition for rehearing en banc, requested the parties address whether *Cybor* should be overruled. *See Lighting Ballast Control LLC v. Philips Elec. N. Am. Corp.*, 500 Fed. Appx. 951 (Fed. Cir. Mar. 15, 2013).

[2] Trial courts have considerable discretion construing claims and may revisit prior constructions. *See, e.g., CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005); *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).

While the meaning of claim terms may be apparent, or agreed, when the parties are unable to agree on the definition of certain claim terms, the court must construe them as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–90 (1996); *Cybor Corp.*, 138 F.3d at 1454. "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U. S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

In construing claim terms, the court refers to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). "[S]ources include 'the words of the claims themselves, the remainder of the specification, the prosecution history (intrinsic evidence), and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (parenthetical supplied).

"It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc.*, 381 F.3d at 1115 (Fed. Cir. 2004)). Sources for ascertaining disputed claim terms include the claims and the specifications. The specification "contain[s] a written description of the invention, and of the manner and process of making and using it." 35 U.S.C. § 112, ¶ 1. "The specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582); *see Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1368 (Fed. Cir. 2012). Specifications can provide insight into how the inventor and patent examiner understood the patent. *Phillips*, 415 F.3d at 1315-16.

Embodiments, examples of the specifications, are illustrative but not limiting. *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) ("'Although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.'" (quoting *Phillips*, 415 F.3d at 1323)). "'[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever,

correct.'"  *Id.* (quoting *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004).

While it may provide meaning or context, extrinsic evidence cannot be used to vary the meaning of terms contrary to the unambiguous meaning expressed in the intrinsic evidence, and cannot be used to vary the meaning of terms contrary to the claim specification and prosecution history.  *Phillips*, 415 F.3d at 1317, 1324; *see Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003).  Intrinsic evidence is preferred over extrinsic evidence. *Chamberlain Grp., Inc. v. Lear Corp.*, 516 F.3d 1331, 1335 (Fed. Cir. 2008).

Applying these principles, the following constructions are reached with respect to each disputed claim term or phrase.

## A.     "Subsequent to mailing" (Claims 39-42)

39  A method for processing returned mail items sent by a sender to an intended recipient, the method comprising [3/]:
>    decoding, **subsequent to mailing** of the returned mail
>    items, information indicating whether the sender wants a
>    corrected address to be provided for the intended recipient,
>    on at least one of the returned mail items; . . .

40  A computer program product residing on a computer readable medium comprising instructions for causing a computer to:

---

3/  "Comprising," a term that appears through these claims, generally introduces illustrative, not exhaustive steps.  "In the patent claim context the term 'comprising' is well understood to mean 'including but not limited to.'"  *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007); *see Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps."); *Georgia-Pacific Corp. v. U. S. Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999) ("'comprising' . . . is inclusive or open-ended and does not exclude additional unrecited elements or method steps.") (citing Patent and Trademark Office, Department of Commerce, *Manual of Patent Examining Procedure* § 2111.03 (6th ed. 1997)); *see also Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1370-74 (Fed. Cir. 2005) (holding that "'comprising . . . a group of first, second, and third blades'" did not exclude razors with more than three blades).

store decoded information indicating whether a sender wants a corrected address to be provided and a customer number, each associated with at least one of a plurality of mail items returned **subsequent to mailing** as being undeliverable; . . .

41   A system for processing a plurality of undeliverable mail items comprising:

a first detector, wherein the first detector detects, **subsequent to mailing** the undeliverable mail items, encoded information on at least one of the plurality of undeliverable mail items indicating whether a sender wants a corrected address to be provided for at least one of the undeliverable mail items; . . .

42   A method for processing a plurality of undeliverable mail items, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;

identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned **subsequent to mailing** as undeliverable;

decoding the encoded data incorporated in at least one of the undeliverable mail items;

creating output data that includes a customer number of the sender and at least a portion of the decoded data;

determining if the sender wants a corrected address provided for intended recipients based on the decoded data;

if the sender wants a corrected address provided, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address files; and

if the sender does not want a corrected address provided, posting return mail data records on a network that is

> accessible to the sender to enable the sender to access the records.

Compl.., Exs. A-C ("'548 Patent") (emphasis supplied).

As noted previously, with respect to "subsequent to mailing" plaintiff seeks a construction of "plain and ordinary meaning" or, if an additional construction is required, it proposes that the term means "after mailing." Defendant proposes the construction "after processing by the postal service."

Defendant supports its proposed construction by asserting that "the specification of the '548 Patent repeatedly shows that the patentees intended for the disclosed systems and methods to occur after processing by the postal service had been completed." Doc. 44 at 4-5.  The embodiments of Figures 1, 2 and 5 are cited as examples. *Id*. at 5 ('548 Patent, 3:32-34, 4:36-39, 5:42-44).  Also for support of its proposed "after processing" construction defendant at page five of its brief, quotes the '548 Patent specification (3:21-31):

> Accordingly, when a piece of mail is undeliverable for any reason, it is returned by the post office to the return mail service provider offering the processing services of the present invention.  As an alternative, a subscriber can elect to receive its own returned mail, bundle it together, and then deliver it to the return mail service provider for return mail processing.  In any event, at the return mail service provider's location, thousands of pieces of undeliverable mail sent originally by many subscribers to their customers are received either directly from the post office or from subscribers.

With respect to the '548 Patent specification, defendant concludes that it "consistently (and without exception) requires receipt of returned mail items from the postal service after processing by the postal service has been completed."  Doc. No. 44 at 6.

Defendant also relies on prosecution history to support its proposed "after processing" construction at page six of its brief noting that, during prosecution, "[p]laintiff made numerous arguments that attempted to distinguish its invention from

the USPS's accused Postal Automated Redirection System (PARS)."  Defendant quotes plaintiff's statement from the amendment of June 8, 2010 as follows:

> The instant specification discloses, and the present claims exist in, a vastly different mailing and address correction paradigm than that of PARS – one that employs methods and systems that start with an incorrectly addressed mail item that is first mailed, then <u>returned</u> for address correction, and subsequently re-mailed to the intended recipient for delivery.  In contrast, PARS, the primary reference cited in the Office Action and relied upon by the Examiner, discloses a system, technique and elements that are dysfunctional in this post-mailing return for address correction paradigm, as recited in the presently pending claims.

Doc. No. 44-6 at A63 (emphasis in original).

Plaintiff responds to defendant's reliance on specification language that starts with mail items leaving the Postal Service by noting that the examples "are naturally focused on Return Mail's initial business model of providing a third-party service for processing mail returned by the Postal Service." Doc. No. 46 at 3.  Plaintiff notes that by July of 2000, its business plan contemplated licensing "its processes and application program interfaces to the USPS." Doc. Nos. 46 at 3; 41-5.  Plaintiff also notes that the '548 Patent specification includes an exemplary embodiment that is not limited to processing mail items that have left the Postal Service.  This embodiment involves items of mail found to be undeliverable "received at a processing location where they are loaded onto a transport mechanism and then optically scanned." '548 Patent 2:15-26.  Plaintiff argues that the processing location could be part of the Postal Service or run by a third party.  Doc. No. 46 at 3.

In view of the "processing location" embodiment, plaintiff contends that defendant is incorrect in its assertion at page six of its brief, that the '548 Patent specifications "without exception" require receipt of returned mail items from the Postal Service after processing by the Postal Service is completed.  However, plaintiff also relies on precedent that even if defendant was correct and the specification discloses only the single embodiment of third-party returned mail processing, claims would not be limited to that embodiment unless the patentee had demonstrated a clear

intention to so limit the claim scope. *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1381 (Fed. Cir. 2009). Plaintiff argues that defendant has not identified any such clear intention to limit the scope of the claims to third-party return mail processing. Doc. No. 46 at 4.

With respect to prosecution history, where defendant insists that plaintiff distinguished the invention from all internal USPS processes, plaintiff responds that it distinguished its invention from the PARS reference in that PARS attempts to obtain a correct address for a mail item prior to attempted delivery to an intended recipient. Doc. No. 46 at 8. Plaintiff agrees that the asserted claims do not apply to this point-of-entry redirection processing since its invention exists in a different mailing and address correction paradigm – one in which correct addresses are obtained after attempted delivery to an intended recipient. *Id*. at 4-5. Plaintiff states it has never disclaimed processing a mail item returned to the Postal Service after a failed delivery attempt from the scope of its invention. *Id*. at 8.

After careful consideration of the arguments presented, defendant has not presented requisite support for its proposed "after processing" construction. The '548 Patent specification does not compel a construction limiting the claims to situations where the Postal Service has fully completed its processing. The parties apparently agree that the claims are limited to situations occurring after the Postal Service has attempted delivery to an intended recipient, which eliminates processing prior to attempted delivery, but this does not include all Postal Service processing. Absent support for defendant's proposed construction, subsequent to mailing is left with its plain and ordinary meaning. There is no indication that the '548 Patentee intended that "mailing" have a special definition and none is stated in the specification or prosecution history. *See Laryngeal Mask Co. v. Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010). Ordinary usage, as reflected for example, in the so-called "mailbox rule" considers mailing as that point in time when the sender relinquishes a mail item to the USPS such as by depositing it into a Post Office receptacle, or at least the point shortly thereafter when the mail item is postmarked. *See Rios v. Nicholson*, 490 F.3d 928, 930-31 (Fed. Cir. 2007). The Postal Service may be considered to act as the agent of the sender after mailing until delivery of the item to the intended recipient. *Rhode Island Tool Co. v. United States*, 130 Ct. Cl. 698, 705, 128 F. Supp. 417, 420 (1955).

Accordingly, "subsequent to mailing" is construed to mean, "after mailing."

**B.    "Returned Mail Items"/"Mail Items Returned" (Claims 39 & 40)**

39  A method for processing returned mail items sent by a sender to an intended recipient, the method comprising:

> decoding, subsequent to mailing of the **returned mail items**, information indicating whether the sender wants a corrected address to be provided for the intended recipient, on at least one of the **returned mail items**;
>
> obtaining an updated address of the intended recipient subsequent to determining that the sender wants a corrected address to be provided for the intended recipient; and electronically transmitting an updated address of the intended recipient to a transferee, wherein the transferee is a return mail service provider.

40  A computer program product residing on a computer readable medium comprising instructions for causing a computer to:

> store decoded information indicating whether a sender wants a corrected address to be provided and a customer number, each associated with at least one of a plurality of **mail items returned** subsequent to mailing as being undeliverable;
>
> determining from the decoded data that the customer wants a corrected address to be provided for at least one of the plurality of undeliverable mail items;
>
> receive an updated address of an intended recipient for at least one of the plurality of undeliverable mail items, subsequent to and based upon the determining step; and transmit the updated address to a transferee, wherein the transferee is a return mail service provider.

'548 Patent (emphasis supplied).

As noted previously, plaintiff's proposed construction for "returned mail items" and for "mail items returned" is "items that are mailed and come back to a post office facility." Defendant's proposed construction for these terms is "mail items returned to the sender after processing by the postal service."

In support of its proposed construction, defendant focuses (Doc. No. 44 at 11) on the initial sentence in the "Background of the Invention" which states "the present invention relates generally to mail processing, and more particularly to a method, system, and program product for processing business mail that is returned to sender due to an inaccurate or expired address for the intended recipient." *See* Doc. No. 44 at 11 (citing '548 Patent 1:20-24). Plaintiff responds that the use of the phrase "the present invention" does not automatically limit the meaning of claim terms, but must be read in context with the entire specification. *Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1396 (Fed. Cir. 2008); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1094 (Fed. Cir. 2003). Plaintiff asserts that the construction of "'mail items returned to the sender . . .' conflicts with the language of claims 39 and 42" and "excludes a preferred embodiment from the scope of the claims." Doc. No. 46 at 8. This embodiment describes that mail would not be returned to the sender, but "returned by the post office to the return mail service provider offering the processing services of the present invention." '548 Patent 3:21-24. As defendant's construction would read a preferred embodiment out of the scope of the claims, plaintiff asserts it should be rejected. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Defendant's suggestion that "the return mail service provider" could be considered the sender's agent would require a rewriting of the claim.

Defendant also relies on prosecution history, asserting that plaintiff there "disclaimed any application of 'returned mail' to internal postal service processes for redirecting mail." Doc. No. 44 at 15. Defendant relies on three references (PARS, Second Generation and Pintsov) cited by the examiner. *Id*. at 14-17. Plaintiff correctly notes that with respect to these references, plaintiff did not distinguish them in a way that is relevant to the meaning of "returned mail." Doc. No. 46 at 11.

Finally, extrinsic evidence in the form of the United States Postal Service's *Glossary of Postal Terms* (Pub. 32, May 1997, p. 100) defines "return mail" as "[m]ail that must be sent in the opposite direction for proper dispatch ([a]lso called turnback mail.)." Doc. No. 41-4. This definition does not support defendant's

proposed construction, as neither return to sender nor completion of Postal Service processing is required.

Upon analysis of the constructions proposed by the parties the court concludes that defendant's position lacks requisite support and would read a preferred embodiment out of the scope of claims.   Plaintiff's proposed construction is consistent with the intrinsic and extrinsic evidence.

Accordingly, "returned mail items" and "mail items returned" are construed to mean "[i]tems that are mailed and come back to a post office facility."

**C     "Undeliverable    Mail    Items"    (Claims    40-43)**
**"Identifying as Undeliverable Mail Items" (Claim 42)**

42  A method for processing a plurality of **undeliverable mail items**, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addressee;

**identifying, as undeliverable mail items**, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable;

decoding the encoded data incorporated in at least one of the **undeliverable mail items**;

creating output data that includes a customer number of the sender and at least a portion of the decoded data;

determining if the sender wants a corrected address provided for intended recipients based on the decoded data;

if the sender wants a corrected address provided, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address files; and

if the sender does not want a corrected address provided, posting return mail data records on a network that is

accessible to the sender to enable the sender to access the
records.

'548 Patent (emphasis supplied).

As previously noted, plaintiff's proposed construction for "undeliverable mail"
is "[m]ail items that fail attempted delivery," and for "identifying, as undeliverable
mail items" plaintiff's proposed construction is "[i]dentifying, mail items that failed
attempted delivery." Defendant's proposed constructions for these terms are, "[m]ail
items that could not be delivered by the postal service," and "[i]dentifying, mail items
that could not be delivered by the postal service."

The parties differ on when mail becomes undeliverable. Plaintiff's proposed
construction is that mail becomes undeliverable after a failed delivery attempt.
Defendant's proposed construction is that mail becomes undeliverable after the Postal
Service exhausts all remedial steps to correct flaws which led to a failed delivery
attempt.

Plaintiff relies on extrinsic evidence to support its proposed construction,
namely the Postal Service's *Glossary of Postal Terms* which defines "undeliverable-
as-addressed mail" as "[m]ail that the USPS cannot deliver as addressed and must
forward to the addressee, return to sender, or send to a mail recovery center." Doc.
No. 46-4 at 121. A mail recovery center is defined as "a postal facility designed only
to receive and attempt to return undeliverable and unforwardable mail of obvious
value." Doc. No. 46-1 at 67. Plaintiff asserts that "a person of ordinary skill would
understand that the Postal Service makes this determination [undeliverability] through
attempting delivery." Doc. No. 46 at 12.

Defendant argues that prosecution history reflects that plaintiff disclaimed
coverage of undeliverable mail based on "attempted delivery" referring to PARS,
Second-Generation and Pintsov references. Doc. No. 44 at 22-24. However, plaintiff
correctly notes that it never distinguished these references on the ground that
"undeliverable mail" is mail that "could not be delivered by the postal service."
Rather plaintiff asserts that it repeatedly argued that undeliverable mail is mail after
an attempted delivery without regard to whether the Postal Service could take
remedial steps to redirect the mail after a failed delivery attempt. Doc. No. 46 at 14.

Plaintiff cites a similar construction by the Postal Service of "undeliverable mail" in its Request for *Ex Parte* Reexamination of the '548 Patent "asserting that USPS prior art anticipated receiving undeliverable mail items because an internal Postal Service unit known as CFS [Computerized Forwarding System] 'receives "undeliverable-as-addressed" mailpieces from postal carriers.'"   Doc. Nos. 46 at 14; 46-2 at 4.

Finally, the plaintiff notes that the specification does disclose that, after a determination is made that mail is deliverable, it is then "physically delivered to the addressee as normal." '548 Patent 5:35-36.  Plaintiff argues that this disclosure also leads to a conclusion that "[u]ndeliverable mail is therefore mail that cannot be delivered to the addressee 'as normal.'" Doc. No. 46 at 12.

Upon analysis it is concluded that neither proposed construction receives strong support in the intrinsic or extrinsic evidence cited, but plaintiff's construction does have the support of defendant's similar construction in the Request for *Ex Parte* Reexamination.   Accordingly, subject to possible reconsideration as a result of additional evidence developed, it is concluded that "undeliverable mail items" is construed as "mail items that fail attempted delivery," and "identifying as undeliverable mail items" is construed as "identifying mail items that fail attempted delivery."

**D.     "Mail Items That Are Returned Subsequent to Mailing**
 **as Undeliverable" Claims 39-42**

For the reasons expressed with respect to the prior construction of "mail items returned," "subsequent to mailing" and "undeliverable mail items" the construction of "[i]tems that are mailed and come back to a post office facility after failed delivery" is adopted for "mail items that are returned subsequent to mailing as undeliverable."

**E.     "Receiving from a Sender" (Claim 42)**

42   A method for processing a plurality of undeliverable mail items, comprising:

> **receiving from a sender** a plurality of mail items, each
> including i) a written addressee, and ii) encoded data

> > indicating whether the sender wants a corrected address to
> > be provided for the addressee;

'548 Patent (emphasis supplied).

As previously noted plaintiff's proposed construction for "receiving from a sender" is "receiving from a subscriber." Defendant's proposed construction is "[a] return mail service provider receives from a subscriber."

Upon an analysis of the proposed constructions, plaintiff's proposed construction is adopted. The plain language of the claim does not limit who receives from a sender (subscriber). Defendant's reliance on figures and descriptions of exemplary embodiments to support its proposed construction runs afoul of the restriction against importing limitations into claim terms from specifications. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).

Accordingly the adopted construction of "receiving from a sender" is "receiving from a subscriber."

### F.     "Return Mail Service Provider" (Claims 39-41)

39  A method for processing returned mail items sent by a sender to an intended recipient, the method comprising:

> decoding, subsequent to mailing of the returned mail items, information indicating whether the sender wants a corrected address to be provided for the intended recipient, on at least one of the returned mail items;
> obtaining an updated address of the intended recipient subsequent to determining that the sender wants a corrected address to be provided for the intended recipient; and
> electronically transmitting an updated address of the intended recipient to a transferee, wherein the transferee is a **return mail service provider**.

40   A computer program product residing on a computer readable medium comprising instructions for causing a computer to:

> store decoded information indicating whether a sender wants a corrected address to be provided and a customer number, each associated with at least one of a plurality of mail items returned subsequent to mailing as being undeliverable;
>
> determining from the decoded data that the customer wants a corrected address to be provided for at least one of the plurality of undeliverable mail items;
>
> receive an updated address of an intended recipient for at least one of the plurality of undeliverable mail items, subsequent to and based upon the determining step; and
>
> transmit the updated address to a transferee, wherein the transferee is **a return mail service provider**.

41   A system for processing a plurality of undeliverable mail items comprising:

> a first detector, wherein the first detector detects, subsequent to mailing the undeliverable mail items, encoded information on at least one of the plurality of undeliverable mail items indicating whether a sender wants a corrected address to be provided for at least one of the undeliverable mail items; and
>
> a processor that uses a computer program comprising instructions that cause the system to:  i) decode the information indicating whether the sender wants a corrected address to be provided; ii) encode and decode intended recipient identification information; and iii) enable an updated address of an intended recipient to be sent to a transferee, wherein the transferee is a **return mail service provider**.

'548 Patent (emphasis supplied).

As previously noted, plaintiff's construction of "return mail service provider" is "[a]ny entity that performs electronic return mail processing," whereas defendant proposes the construction of "[a]n entity that processes mail returned to the sender by the postal service."

Previous discussion on "returned mail" has rejected defendant's proposed "returned to sender," which leaves the issue of "electronic" as the remaining difference in the proposed constructions. Defendant opposes the inclusion of "electronic" in the constructions because the '548 Patent specification states several roles for the return mail service provider which are not distinctly "electronic," such as "load mail onto a transport mechanism." Doc. No. 44 at 20; *see* '548 Patent 2:15-20.

Claims 39-41 relate to processing return mail by means of an electronic method or system. Electronic terms such as "decoding" and "electronically transmitted" are used. Including consideration of surrounding claim language, as provided in *IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1117 (Fed. Cir. 2011), it is concluded that electronic return mail processing is claimed.

Accordingly, "return mail service provider" is construed as "any entity that performs electronic return mail processing."

### G.    "Address" (Claims 39-42)

Claim 42 is exemplary:

42  A method for processing a plurality of undeliverable mail items, comprising:

> receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected **address** to be provided for the addressee;
> identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable; . . .

> determining if the sender wants a corrected **address**
> provided for intended recipients based on the decoded data;
> if the sender wants a corrected **address** provided,
> electronically transferring to the sender information for the
> identified intended recipients that enable the sender to
> update the sender's mailing **address** files; and
>  if the sender does not want a corrected **address** provided,
> posting return mail data records on a network that is
> accessible to the sender to enable the sender to access the
> records.

'548 Patent (emphasis supplied).

As noted previously, plaintiff's proposed construction for "address" is: "[P]lain and ordinary meaning. To the extent that any construction beyond plain and ordinary meaning is required, RMI proposes the following construction: 'The location to which the USPS is to deliver or return a mailpiece,'" and defendant's proposed construction is: "Street name and house number, city, state, and postal code. Alternative:  the written directions indicating the location to which the USPS is to deliver or return a mailpiece."  Doc. No. 46 at 16.

Plaintiff asserts that defendant's proposed construction of street name and house number, city, state and postal code is too narrow and would exclude many government offices, including the Internal Revenue Service and United States Senators.  Government website instructions require only the city, state and zip code. Plaintiff also cites to the broad and ordinary use of "address" in prosecution history and the USPS *Glossary of Postal Terms* which defines "address" as "**[t]he location to which the USPS is to deliver or return a mailpiece.**  It consists of certain elements **such as** recipient name, street name and house number, and city, state, and ZIP Code as required by the mail class."  Doc. No. 41 at 30 (citing *Glossary of Postal Terms*, Pub. 32, May 1997, p. 5 (emphasis in original)).

Defendant points out that "'address" is used in multiple senses in the claims which makes its construction more important than may be immediately apparent. Doc. No. 44 at 38.  The term is used in various states of the process, starting with

"address" used by the sender on the mailpiece when deposited for mailing, followed by an intermediate step in which data is transmitted to a mailing address service provider,[4] a transmittal between the application server and the address server which in turn provides responsive data to the return mail application server, which may require a very specific format.   Accordingly, defendant concludes these communications do not fall within the plain and ordinary meaning of "address."

Plaintiff responds that although "address" is used in various stages of this method and process patent, from its initial placement on the mail item by the sender/subscriber as well as encoding, decoding, electronic transmission and/or availability, the underlying meaning of address in the claims presented for construction, is the same.

The parties also disagree whether "address" must be in writing.  Defendant's alternative construction in response to plaintiff's critique, of "locational aspects of a written address (*i.e.*, an identifiable location, city, state and zip code)," Doc. No. 44 at 39,[5] retains the requirement of a writing, a limiting condition plaintiff contends is not warranted, in that the addition of a writing requirement would remove from the patent protection an address stored in a computer in code, or in verbal form.[6] Defendant attempts to create a distinction between a "written address" and an address stored on a computer, such as the input data in a request to a mailing address service provider, an address stored as binary code in computer memory, or a spoken address, distinctions not supported by the claim language.  As noted, electronic processing and provision of updated addresses, for example, in Claim 42, and specifications that describe decoding data then made available electronically, make it clear that electronic address correction was anticipated and that the writing requirement defendant suggests is too narrow.  Accordingly, the court declines to add further

---

[4]   The parties have agreed to construe "mailing address service provider" as "[a]ny entity that stores and provides updated address information."   J. Cl. Constr. Stmt., Doc. No. 39-1.

[5]   Defendant's alternative construction for "address" is "the written directions indicating the location to which the USPS is to deliver or return a mailpiece."   Doc. No. 44 at 39.

[6]   The court does not reach the question of whether a code in computer memory is written, or whether an address can, in this context, be verbal.

verbiage to construe the word "address," defaulting to its plain and ordinary meaning. *See Harris Corp v. IXYX Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997).

### H.   "Decoding"/"Decode"/"Decoded   Information" /"Decoded Data" (Claims 39-42)

39  A method for processing returned mail items sent by a sender to an intended recipient, the method comprising:

> **decoding,** subsequent to mailing of the returned mail items, information indicating whether the sender wants a corrected address to be provided for the intended recipient, on at least one of the returned mail items; . . . .

40   A computer program product residing on a computer readable medium comprising instructions for causing a computer to:

> store **decoded** information indicating whether a sender wants a corrected address to be provided and a customer number, each associated with at least one of a plurality of mail items returned subsequent to mailing as being undeliverable; . . . .

41   A system for processing a plurality of undeliverable mail items comprising:

> a first detector, wherein the first detector detects, subsequent to mailing the undeliverable mail items, encoded information on at least one of the plurality of undeliverable mail items indicating whether a sender wants a corrected address to be provided for at least one of the undeliverable mail items; and
> a processor that uses a computer program comprising instructions that cause the system to: i) **decode** the information indicating whether the sender wants a corrected address to be provided; ii) encode and **decode** intended recipient identification information; and iii) enable an updated address of an intended recipient to be

> sent to a transferee, wherein the transferee is a return mail
> service provider.

> 42   A method for processing a plurality of undeliverable mail items,
> comprising:
>> receiving from a sender a plurality of mail items, each
>> including i) a written addressee, and ii) encoded data
>> indicating whether the sender wants a corrected address to
>> be provided for the addressee;
>> identifying, as undeliverable mail items, mail items of the
>> plurality of mail items that are returned subsequent to
>> mailing as undeliverable;
>> **decoding** the encoded data incorporated in at least one of
>> the undeliverable mail items;
>> creating output data that includes a customer number of the
>> sender and at least a portion of the **decoded data**;
>> determining if the sender wants a corrected address
>> provided for intended recipients based on the **decoded
>> data**; . . .

'548 Patent (emphasis supplied).

As noted previously, plaintiff's proposed construction for "decoding" and "decode" is: "Decipher information into useable form" and defendant's proposed construction is: "Convert information into useable form." Plaintiff's proposed construction for "decoded information" is: "Deciphered, usable information" and defendant's proposed construction is: "Information converted into useable form." For "decoded data," plaintiff proposes the construction: "Deciphered useable data" and defendant proposes: "Information converted into useable form."

Upon analysis of the proposed constructions, it is concluded that plaintiff's proposed constructions using the terms "decipher" and "deciphered" more closely follow the customary meaning of the terms and reflects the claim language. This is because decoding must operate on encoded data. Defendant's proposed construction employs "convert" and "converted" which does not recognize that the information involved is coded and thus broadens the term construed.

Accordingly, "decoding" and "decode" are construed as "decipher information into useable form."  "Decoded information" is construed as "deciphered useable information."  "Decoded data" is construed at "deciphered, useable data."

I.  **"If Sender Wants a Corrected Address Provided, Electronically Transferring" / "If the Sender Does Not Want a Corrected Address Provided, Posting Return Mail Data Records on a Network That Is Accessible to a Sender" (Claim 42)**

42  A method for processing a plurality of undeliverable mail items, comprising:

receiving from a sender a plurality of mail items, each including i) a written addressee, and ii) encoded data indicating whether the sender wants a corrected address to be provided for the addr

identifying, as undeliverable mail items, mail items of the plurality of mail items that are returned subsequent to mailing as undeliverable;

decoding the encoded data incorporated in at least one of the undeliverable mail items;

creating output data that includes a customer number of the sender and at least a portion of the decoded data;

determining if the sender wants a corrected address provided for intended recipients based on the decoded data;

**if the sender wants a corrected address provided**, electronically transferring to the sender information for the identified intended recipients that enable the sender to update the sender's mailing address files; and

**if the sender does not want a corrected address provided, posting return mail data records on a network that is accessible to the sender to enable the sender to access the records.**

'548 Patent (emphasis supplied).

As noted previously, for "if the sender wants a corrected address provided" and "if the sender does not want a corrected address provided" the parties both propose a construction of "plain and ordinary meaning," but defendant's proposed construction adds "(mutually exclusive alternatives)." For "posting return mail data records on a network that is accessible to the sender" plaintiff's proposed construction is "plain and ordinary meaning" and defendant's proposed construction is "posting decoded data on a network that is accessible to the sender."

Dealing first with the corrected address construction, the parties agree that the claim terms do not require further construction and should be accorded their plain and ordinary meaning.  They also agree that a sender cannot concurrently want and not want a corrected address for a mail item.  They disagree on whether these want-and-not-want steps are "mutually exclusive," and whether these are the only two options, as defendant contends, so further steps are precluded.

Defendant reasons that its proposed construction comports with preferred embodiment Figure 3, which, it contends presents two mutually exclusive outcomes depending on the determination made in block 302.  "DOES SENDER WANT AN ATTEMPT MADE TO PROVIDE CORRECT ADDRESS FOR INTENDED RECIPIENT?" Fig. 3, block 302; *see also* '548 Patent at 4:55-58 ("[A] test is made to determine if the sender (originator) wants the return mail application service provider to provide corrected addresses for intended recipients.").  If at block 302 the sender wants a corrected address provided, the "if" clause is operative.  *See* '548 Patent at 4:63-5:13.  If at the block 302 decision junction the sender does not want a corrected address provided, the "if not" clause is operative. *See* '548 Patent at 4:58-63.  Defendant asserts these two outcomes are "mutually exclusive alternatives."

Plaintiff reads Figure 3 differently–as a processing logic embodiment in which returned mail data records are placed on a website accessible to the sender regardless whether the sender wants (block 314) or does not want (block 304) a corrected address to be provided for the intended recipient by the return mail service provider.  Plaintiff asserts that if defendant intends that the consequences of the block 302 decision are mutually exclusive, the Claim 42 language would have to be rewritten to provide that following a decision that the sender wants a corrected address provided, the sender electronically receives information enabling the update of the sender's mailing address files, but return mail data records would not be posted on

a network that is accessible to the sender to enable the sender to access the records. The "mutually exclusive" consequence of the block 302 decision would be that return mail data records would be posted if an address correction was not wanted, but would not be posted if an address correction was wanted.   Doc. No. 41 at 37; Doc. No. 52 (Tr.) at 146-47.

Plaintiff also asserts that defendant's "mutually exclusive" construction would exclude the embodiment depicted in Figure 3 from the scope of Claim 42.  This is a result which is rarely, if ever, correct.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Defendant also cites to prosecution history, where during reexamination, claims that included only an "if" clause or its equivalent were rejected by the patent examiner and were all eventually cancelled.  Doc. No. 44 at 29.  However, it is concluded that this material has more relevance to future proceedings, rather than claim construction and will be considered if presented then.

Accordingly, with respect to claim construction it is concluded that adding "mutually exclusive alternatives," to the "plain and ordinary meaning" construction both parties agree is appropriate, would add ambiguity, not clarity to the meaning of the claim.  The addition of this language to the construction could also result in excluding the embodiment depicted in Figure 3 from the scope of Claim 42.

In this circumstance, the construction of plain and ordinary meaning is adopted for "if the sender wants a corrected address provided" and "if the sender does not want a corrected address provided," with the possibility of revisiting this construction in the light of future proceedings.  *See* n.2, *supra.*

With respect to the proposed constructions for "posting return mail data records on a network that is accessible to the sender" the parties agree that the claim term should be given its plain and ordinary meaning except for "return mail data records," which defendant's proposed construction construes as "decoded data."  Doc. No. 44 at 31.

For its "decoded data" construction defendant relies on the Figure 3 embodiment recited in Claim 42.  As the "return mail data records" of Claim 42 are

associated only with a decision in block 302 of Figure 3 that a corrected address is not wanted, the specification teaches, at 4:58-61, that these records "are placed on the Internet website of the service provider for pickup by the sender (logic block 304)." Defendant notes that, "[a]t this stage, each record contains nothing more than the decoded information from the 2-D barcode on the mail items."  Doc. No. 44 at 33. Accordingly defendant proposes the "decoded data" construction.

Plaintiff notes that defendant's construction imports a limitation from a single embodiment into the claim language, but as indicated in logic block 314 of Figure 3, "return mail data records" may contain non-decoded data such as corrected addresses. Doc. Nos. 41 at 38; *see also* 52 (Tr.) at 153.  Plaintiff also notes that the term "decoded data" also appears in Claim 42 and relies on the principle that "[t]he use of two terms in a claim requires that they connote different meanings."  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006).

Upon analysis it is concluded "posting Return Mail data records on a network that is accessible to the sender" shall be afforded its plain and ordinary meaning. Defendant's proposed "decoded data" construction adds unnecessary ambiguity and does not overcome the maxim whereby different claim terms are generally given different meanings.

s/ James F. Merow
James F. Merow
Senior Judge