# In the United States Court of Federal Claims

No. 11-130C

(Filed: November 22, 2021)

| | |
|---|---|
| **RETURN MAIL, INC.,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES,** ) <br> ) <br> Defendant. ) | Reconsideration of discovery sanctions; in absence of hardship, required payment of sanctions amount |

Lee L. Kaplan, Smyser Kaplan & Veselka, L.L.P., Houston, Texas, for plaintiff. With him on the briefs was Douglas H. Elliott, Elliott Law PLLC, Bellaire, Texas.

Shahar Harel, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Brian M. Boynton, Acting Assistant Attorney General, Gary L. Hausken, Director, and Rachel Hicks, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., as well as Rebecca Harker Duttry, Attorney, and Stephan J. Boardman, Attorney, United States Postal Service, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Senior Judge.

Pending before the court in this patent action is plaintiff Return Mail's motion to require prompt payment of awarded costs, *see* Pl.'s Mot. for Prompt Payment, ECF No. 188, as well as the United States' motion for reconsideration, *see* Def.'s Mot. for Recons., ECF No. 189, and in the alternative, motion to stay payment, *see* Def.'s Cross-Motion and Resp. ("Def.'s Cross-Mot."), ECF No. 190. These motions stem from Return Mail's previous motion to preclude the government's use of withheld documents and request for monetary sanctions, *see* ECF No. 155, which the court granted in part and denied in part, *see Return Mail, Inc. v. United States*, 153 Fed. Cl. 718 (Fed. Cl. 2021). In that decision, the court determined that sanctions against the government were warranted for its delayed disclosure of requested and relevant documents. *Id.* at 723. While the court did not preclude the use of the documents as sought by plaintiff, the court did impose sanctions on the government in the form of reopening discovery and awarding plaintiff "its fees and expenses for submitting its motion for sanctions and one-third of its

attorney time and all of the expert time for review of the documents disclosed on March 24 and 29, 2021." *Id.*[1]

The court awarded $40,207.25 to plaintiff after minimal disagreement between the parties. Order of October 1, 2021, ECF No. 181. The parties now disagree over when payment of the awarded $40,207.25 must be made and whether it should be made at all. Plaintiff contends that no conditions were placed on the recovery and that the government must be required to make prompt payment of the sanctions award. *See* Pl.'s Mot. at 2. In contrast, the government seeks to have the court's sanctions award overturned via a motion for reconsideration and in the alternative seeks to stay payment of the sanctions award until the end of the case, which it suggests is necessary to preserve an appeal on the issue. *See* Def.'s Mot. for Recons.; Def.'s Cross-Mot. The parties have completed briefing. *See* Pl.'s Reply to Mot. for Prompt Payment, ECF No. 192; Def.'s Reply to Mot. for Recons., ECF No. 195-1; Def.'s Reply to Mot. to Stay Payment, ECF No. 194. The motions are ready for disposition. For the reasons stated, defendant's motion for reconsideration is GRANTED IN PART, plaintiff's motion for prompt payment is GRANTED, and defendant's motion for a stay of payment is DENIED.

## BACKGROUND

This case began on February 28, 2011, over ten years ago, when plaintiff Return Mail, Inc. filed suit in this court alleging patent infringement by the United States Postal Service of U.S. Patent No. 6,826,548 ("the '548 patent"). Compl. ¶ 1, ECF No. 1. In due course, the government provided its initial disclosures as required by Rule 26 of the Rules of the Court of Federal Claims ("RCFC"). Those disclosures identified "Brent A. Raney, USPS Manager . . . as a person likely to have discoverable information on the general subjects of OneCodeACS® service development and operation; and Postal Automated Redirection Service (PARS) system engineering." Def.'s Mot. for Recons. at 2 (internal quotations omitted). Immediately thereafter, Return Mail propounded its first set of requests for production of documents, seeking among other things: "[a]ll documents and things that relate[d] to the Accused System and/or the Accused Method, including but not limited to functional specifications, design documents, database descriptions, schematics, datasheets, source code, and electronic mail." Pl.'s Reply to Mot. to Preclude, Ex. 1 at 8, ECF No. 159-1. Plaintiff also requested "[a]ll other documents and communications on which [the government] relie[d] in support of any of [its] defenses or counterclaims in this action." *Id.* at 16. To both requests, the government agreed to provide responsive non-objectionable documents. No documents were provided from Mr. Raney.

Thereafter, the case was stayed when the government petitioned the Patent Trial and Appeal Board ("PTAB") to institute a covered business method review of the '548 patent. *See* Order of October 21, 2014, ECF No. 83. The stay was lifted on September 5, 2019, *see* Order of September 5, 2019, ECF No. 108, after extensive litigation before the PTAB, the United States

---

[1] This award was partially contingent on plaintiff having to take further depositions after reviewing the withheld documents. If no deposition resulted then "compensation for attorney time spent reviewing the belated production w[ould] be reduced to 10 percent and compensation for expert time spent reviewing the documents w[ould] be reduced to 25 percent." *Return Mail,* 153 Fed. Cl. at 723.

2

Court of Appeals for the Federal Circuit, and the United States Supreme Court, which ultimately invalidated the PTAB's review on procedural grounds, s*ee Return Mail, Inc. v. United States Postal Serv.*, --- U.S. ---, 139 S. Ct. 1853, 1867 (2019) ("[A] federal agency is not a 'person' who may petition for post-issuance review under the [America Invents Act].").

Once the case before this court resumed, Return Mail served its second set of requests for production on January 8, 2021. *See* Def.'s Mot. for Recons., Ex. A, ECF No. 189-1. The second set of requests for production asked among other things for "[a]ll documents and communications concerning the development of Intelligent Mail barcode" and "[a]ll documents and communications related to time spent, expense incurred, and investment in the development of each Accused System and/or Accused Method." Def.'s Resp. to Pl.'s Mot. to Preclude, Ex. D at 6, 7, ECF No. 158-7. In response to these requests, defendant initially produced approximately 3,000 documents between February 24 and 25, 2021. Discovery proceeded and depositions were taken. On March 24 and 29, 2021—the last days of discovery—defendant produced almost 50,000 pages of material, Pl.'s Mot. to Preclude at 1, ECF No. 155, which it stated to be emails of Brent Raney, the Postal Service manager the government had identified years prior as likely to have discoverable information, *see* Def.'s Mot. for Reconsid. at 5.[2]

Return Mail subsequently moved to preclude the government "from making any use of" the documents produced at the end of March 2021. Pl.'s Mot. to Preclude at 3. In its reply brief to its motion to preclude, Return Mail alternatively requested "an award of attorneys' fees, expert fees, and costs incurred." Pl.'s Reply to Mot. to Preclude at 8, ECF No. 159. The court held that "[d]isclosing such a large amount of documents after both parties' experts had been deposed 'not only violated the requirements for timely discovery under the [c]ourt's rules, it also prevented meaningful depositions, prejudiced both opposing counsel and the witness, and necessitate[d] another round of depositions,'" *Return Mail*, 153 Fed. Cl. at 722 (quoting *Bowman Constr. Co. v. United States*, No. 18-1822, 2020 WL 1970546, at *5 (Fed. Cl. April 23, 2020)). As a result, the court reopened discovery for sixty days and awarded Return Mail "its fees and expenses for submitting its motion for sanctions and one-third of its attorney time and all of the expert time for review of the documents disclosed on March 24 and 29, 2021. In addition, the court . . . award[s] plaintiff all costs and expenses for the depositions that [would be] taken during the extended discovery period." *Id.* at 723. In the event Return Mail opted to not depose Mr. Raney, "compensation for attorney time spent reviewing the belated production w[ould] be reduced to 10 percent and compensation for expert time spent reviewing the documents w[ould] be reduced to 25 percent." *Id.*

Return Mail did not depose Mr. Raney and submitted its bill of costs for $41,882.25. *See* Pl.'s Bill of Costs at 1, ECF No. 170. The government objected to three line-items of Return Mail's costs, two of which the government stated did not reflect the reduction in fees to 10 percent and one that reflected time spent by counsel discussing the case with their clients; the total disputed amount was $1,675. Def.'s Objections to Pl.'s Bill of Costs at 2-3, ECF No. 174. Return Mail accepted the reduction, *see* Pl.'s Resp. to Def.'s Objections, ECF No. 176, and the

---

[2] The documents existed "pre-2002" and were in defendant's possession at the time of the 2011 and 2021 requests. Def.'s Mot. for Recons. at 11.

court entered an order awarding plaintiff $40,207.25 as a discovery sanction, Order of October 1, 2021. The court did not set a deadline for payment.

Thereafter, Return Mail filed a motion to require prompt payment of the discovery sanctions, stating that the government had declined to pay the sanctions because the order was not a final, appealable judgment. Pl.'s Mot. at 2. Subsequently, defendant filed a motion for reconsideration of the sanctions award, arguing (1) that the 2021 production was in response to a new request, not a supplementation of the 2011 production and therefore was not a violation of RCFC 26, (2) that the court's reliance on *Bowman* was manifest legal error, and (3) that the timing of the production was harmless. *See generally* Def.'s Mot. for Recons. Defendant also filed a response to Return Mail's motion for prompt payment along with a cross-motion to stay payment in the event its motion for reconsideration is denied. *See* Def.'s Cross-Mot. Defendant argues that, if the motion for reconsideration is denied, delayed payment is necessary to preserve the government's appeal on the issue because the order is not a final decision under *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 210 (1999). *Id.* at 3-4.

### STANDARDS FOR DECISION

The court's ruling on May 26, 2021, imposing discovery sanctions against the government, was interlocutory as it adjudicated fewer than all of the claims of the case, making RCFC 54(b) the governing rule. *See Return Mail*, 153 Fed. Cl. at 723.[3] Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b); *see Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943) (A court has power "at any time prior to entry of its final judgment . . . to reconsider any portion of its decision and reopen any part of the case."); *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922) ("If [an order is] interlocutory, the court at any time before final decree may modify or rescind it."). The rule reflects the precept that "[a]t an interlocutory stage, the common law provides that the court has power to reconsider its prior decision on any ground consonant with application of the law of the case doctrine." *Wolfchild v. United States*, 68 Fed. Cl. 779, 785 (2005). In such circumstances, "the strict rules governing motions to amend and alter final judgments under Rule 59 do not apply." *Pacific Gas & Elec. Co. v. United States*, 114 Fed. Cl. 146, 148 (2013) (internal quotations and citations omitted). Rather, the court "possesses wide discretion to depart from or stand by it, whatever 'justice requires.'" *E & I Glob. Energy Servs., Inc v. United States,* 152 Fed. Cl. 524, 533 (2021) (quoting *Greene v. Union Mut. Life Ins. Co. of Am.,* 764 F.2d 19, 22 (1st Cir. 1983) (Breyer. J.)).

"Courts must address reconsideration motions with 'exceptional care.'" *IAP Worldwide Servs., Inc. v. United States*, 141 Fed. Cl. 788, 799 (2019) (quoting *Carter v. United States*, 207 Ct. Cl. 316, 318 (1975)). In effect, the court "may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice." *Biery v. United States*, 818

---

[3] The government's motion for reconsideration errs insofar as it relies on RCFC 59(a)(1) and (b), which applies to motions to alter or amend final judgments.

F.3d 704, 711 (Fed. Cir. 2016) (internal quotations and citations omitted).  The court must consider the motion while remaining mindful that a motion to reconsider "is [not] intended to give an unhappy litigant one additional chance to sway the [court]."  *Weaver-Bailey Contractors, Inc. v. United States*, 20 Cl. Ct. 158, 158 (1990) (citation omitted).  The moving party "may not merely reassert arguments that 'were previously made and carefully considered by the court.'"  *Haggart v. United States*, 133 Fed. Cl. 568, 573 (2017) (quoting *Whispell Foreign Cars, Inc. v. United States*, 106 Fed. Cl. 777, 782 (2012) (additional citations omitted)).

## ANALYSIS

### A.  Motion for Reconsideration

The government seeks reconsideration of the court's decision to impose sanctions on the government for its delayed production of nearly 50,000 pages of documents.  *See generally* Def.'s Mot. for Recons.  Defendant first argues that it did not violate RCFC 26 when it did not produce Mr. Raney's emails until 2021; rather, the government contends that the production was not a *supplementation* of its prior production under the 2011 requests but was instead a *new and timely production* in response to the 2021 requests.  *Id.* at 9.  The government emphasizes the different language in the two requests, suggesting that the 2021 production requests were "materially different" from the 2011 requests because they sought "development" information about a specific barcode as opposed to "design and operation" information pertaining to the whole system.  *Id.* at 4.

The court reiterates what it already determined to be factually accurate: "[w]hile plaintiff's second request for production may have encompassed the documents at issue, defendant already had an obligation to produce these documents under plaintiff's 2011 request for production."  *Return Mail*, 153 Fed. Cl. at 722.  The 2011 production requests sought "[a]ll documents . . . that relate to the [a]ccused [s]ystem . . . including but not limited to functional specifications, [and] design documents," Pl.'s Reply to Pl.'s Mot. to Preclude, Ex. 1 at RFP. No 7, as well as other documents on which the government relied "in support of any of [its] defenses or counterclaims."  *Id.* at RFP No. 20.  Both requests would have encompassed the emails that were ultimately produced in 2021 from the Postal Service manager.  While broad in scope, both requests put the government on notice that it needed to investigate documents in their employees' possession that may have been responsive, particularly of those employees it had disclosed as potentially having pertinent information.  The 2011 requests encompassed these documents, the government was under an obligation to provide their production, and the fact that the documents were also responsive to the 2021 requests does not obviate this obligation. Accordingly, the court maintains its prior determination that the government violated its duty to supplement under RCFC 26.

The government next argues that the court misapplied *Bowman Constr. Co. v. United States*, 2020 WL 1970546, at *1 (Fed. Cl. April 23, 2020).  The government contends that *Bowman* is distinguishable from this case because no depositions were sought either before or after the production of the documents at issue.  Def.'s Mot. for Recons. at 15.  This argument fails to consider the key problem created by the government's delayed production: Return Mail could not know if it needed to depose Mr. Raney until it had received and reviewed the

5

documents at issue.  At the time of its ruling on sanctions, the court was conscious of the possibility that a deposition of Mr. Raney might not be warranted, and it accounted for that possibility by conditioning the amount of the discovery sanctions on the occurrence or not of his deposition, *see Return Mail*, 153 Fed. Cl. at 723.  The lack of further depositions does not negate the fact that the government had a duty to disclose those documents to plaintiff so it could make a fully informed decision as to whether to conduct Mr. Raney's deposition or any other depositions within the period for discovery.  The fact that Return Mail did not conduct further depositions affects only the amount of sanctions warranted, not whether sanctions themselves are warranted.  *See Bowman*, 2020 WL 1970546, at *5 (granting sanctions "even though the untimely production occurred during the discovery period").[4]

The government also urges the court to reconsider the award for Return Mail's time spent reviewing the produced documents, citing the *Bowman* court which declined to compensate for tasks that plaintiff's counsel would have had to perform regardless of defendant's lapse.  *Id.* at *4.  The court maintains that plaintiff is entitled to an award for the time spent reevaluating whether additional depositions were necessary as this work was additional to what would have been necessary if the documents had been provided in a timely manner.  It nonetheless agrees that the time spent reviewing the documents themselves would have been necessary regardless.  To insure that the award does not encompass review time as such, the court further reduces the award from one-third of attorney time and all of the expert time for review of the documents to twenty percent of the time spent reviewing the documents.  That reduction will explicitly focus the sanction to account for the time needed to evaluate the need for further depositions, resulting in an award of $8,041.45.

### B.  Timing of the Payment

The parties also disagree as to when the payment of the sanctions award must be made.  Plaintiff contends payment should be made promptly, while defendant seeks a stay of the award until the conclusion of the case.  Defendant claims that if it is required to make immediate payment it will lose its ability to appeal the issue.  The Supreme Court in *Cunningham* anticipated that "in a particular case" a sanctions award could be delayed until the end of trial in order to "reduce any hardship," 527 U.S. at 210; *see also id.* at 211 (Kennedy, J., concurring) (discussing that "[i]f the trial court declines to stay enforcement of the order and the result is an *exceptional* hardship itself likely to cause an injustice," an appeal could be sought (emphasis added)), suggesting that staying payment of a sanctions award may be warranted in *some* but not all cases.  Courts have rejected the notion that the interlocutory status of an award is enough to warrant a stay without more harm.  *See Blemaster v. Sabo*, 2:16-CV-04557, 2018 WL 10322071, at 2 (D. Ariz. Mar. 1, 2018) (declining to stay sanctions where parties did not argue

---

[4] This rationale also extends to the government's argument that Return Mail was not harmed or prejudiced by the delayed disclosure.  The fact that additional depositions ultimately were not warranted is not the relevant question.  Return Mail was harmed by the delayed disclosure of nearly 50,000 pages of documents in the final several days of scheduled discovery because it prevented them from making timely decisions as to whether or not additional depositions were necessary. The result of the determination is irrelevant while the ability to make the determination is key to a fair litigation process.

hardship but instead wrongly contended that the "payment [was] not required at [the] time because a discovery sanction is not an immediately appealable 'final decision'"). In support of its motion to stay, the government does not point to any harm it would suffer from immediate payment other than its allegation that it would lose its ability to later appeal the decision or else be "required to face a contempt of court citation." Def.'s Cross Mot. at 4 n.3. The government is incorrect in its notion that immediate payment would result in it losing the ability to appeal the decision on sanctions; various courts have recognized that immediate payment of a sanctions award does not constitute irreparable harm or otherwise satisfy the collateral order doctrine, necessarily suggesting that no rights—including the right to appeal—are lost. *See, e.g.*, *Nat'l Ass'n of Crim. Def. Laws., Inc. v. United States Dept. of Just.*, 182 F.3d 981, 985 (D.C. Cir. 1999) (finding no irreparable harm where there was no showing that the party awarded costs would be "unable to repay the fees if the award [wa]s later reduced or overturned"); *LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, 2016 WL 6471201, at *3 (11th Cir. May, 26, 2016) (declining to review an award of sanctions under the collateral order doctrine). The government's right to an appeal will not be affected by prompt payment of the sanctions award, and the government has made no showing that Return Mail will be unable to repay the awarded costs in the event the award is reduced or overturned. Where no other harm has been shown, the court sees no reason to stay payment of the sanctions award. As such, the government's motion for a stay is denied, and the plaintiff's motion for prompt payment is granted.

## CONCLUSION

In conclusion, the court GRANTS IN PART defendant's motion for reconsideration. To account for the time spent by plaintiff reevaluating whether further depositions were warranted but subtracting for time spent doing work that would have otherwise been done, 20% of the submitted costs are awarded to plaintiff, totaling $8,041.45. In addition, the court GRANTS plaintiff's motion for prompt payment and DENIES defendant's motion for a stay of the sanctions award. The government shall make payment by December 23, 2021.[5]

It is so **ORDERED**.

s/ Charles F. Lettow<br>
Charles F. Lettow<br>
Senior Judge

---

[5] Plaintiff sought a ten-day deadline for payment, *see* Pl.'s Mot. at 2, but considering the government's internal processes, *see* Def.'s Cross-Mot. at 5, a more lenient allowable time of a month is warranted.